726 P.2d 852
**David W. FRANCIS, Jr.,
Plaintiff-Appellant,**

v.

**MEMORIAL GENERAL HOSPITAL, et al., Defendants-Appellees.**

**No. 15997.**

Supreme Court of New Mexico.

Oct. 16, 1986.

Rehearing Denied Nov. 6, 1986.

Anthony F. Avallone, Las Cruces, for plaintiff-appellant.

Campbell, Reeves & Chavez, B. James Reeves, Kelly H. Burnham, Las Cruces, for defendants-appellees.

**OPINION**

SOSA, Senior Justice.

Plaintiff, David W. Francis, Jr. (Francis), brought this suit against defendants, his employer, claiming violation of his civil rights, breach of contract and wrongful discharge. The trial court granted defend-

ants' motion for summary judgment and Francis appealed. We affirm.

## FACTS

Francis worked as a registered nurse at defendant Memorial General Hospital (Hospital), first in 1982 and then from April 29, 1983. On March 2, 1984, his supervisor instructed him to "float" from his regular station in the intensive care unit to the orthopedics floor. He refused because he was unfamiliar with the new floor and felt incompetent to be charge nurse there. "Floating" was an established policy at the Hospital, and Francis was aware of it when he was hired.

For his refusal to "float," Francis was suspended for two days. On his return he gave notice that he would not "float" if he felt incompetent to do so; in consequence, he was suspended indefinitely. He requested a hearing to grieve his suspension. Defendant Dennis Picard (Picard), the Hospital Personnel Director, provided Francis with a copy of the Hospital's Problem Review Procedure. Additionally, Picard offered to orient Francis to all the floors so that he would feel more comfortable "floating" as the need arose. Francis declined this offer.

Pursuant to the Problem Review Procedure, a factfinding hearing was scheduled for March 12, 1984. Francis was advised that no one from outside the hospital, not even attorneys, would be allowed to attend. Francis appeared at the hearing accompanied by his attorney. He was told that the Employee Policy Manual (Manual) limited participation in grievance hearings to employees of the Hospital and that, therefore, his attorney could not go into the hearing room with him. At that point Francis refused to proceed further with the factfinding. The suspension was made permanent, but defendant Andrews, the Hospital Administrator, sent a letter offering to reinstate Francis if he would agree in writing

to comply with the administrative policies and procedures (including "floating") of the Hospital. This offer, too, Francis rejected. Instead he voluntarily terminated his employment and subsequently filed this action.

Francis raises three issues on appeal.

I. Whether summary judgment was proper on the civil rights and contract claims;

II. Whether the "floating" policy itself is void and therefore cannot suffice as grounds for discharge; and

III. Whether the suspension and termination contravene public policy.

## I. Civil Rights and Breach of Contract Claims

Because these two are interrelated, we address them together. Francis did not have a written contract, but contends that he did have an "expectancy of continued employment" since he had successfully completed a period of probation. The Supreme Court has held that such an expectancy can be a property interest protected by the Fourteenth Amendment. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

█ This Court has recognized that a contract of employment may be implied from a personnel policy guide, and where such a policy manual exists, the employer must follow the procedures therein governing termination, even for an employee at will. *Forrester v. Parker*, 93 N.M. 781, 606 P.2d 191 (1980). If the employer is a public entity acting "under color of state law," then the termination procedures implicate the due process guarantee of the Fourteenth Amendment, enforceable under 42 U.S.C. Section 1983 (1976). *Jacobs v. Stratton*, 94 N.M. 665, 615 P.2d 982 (1980).[1]

This constitutional protection is most frequently invoked, however, when the employee is alleging that he was discharged because of his exercise of a constitutional right such as freedom of speech or association. Here Francis does not deny that his status is that of an em-

---

1. In its memorandum opinion, the trial court concluded that Francis "did have a property interest in his expected continued employment; and, therefore, he was entitled to be afforded constitutional due process in the grievance hearing."

The trial court found that a property interest did exist, but concluded that the termination procedure actually applied was constitutionally adequate, if not optimal. On appeal Francis contends that the Hospital incorrectly applied the Problem Review Procedure when instead it should have followed procedures entitled "Discipline" (including "insubordination" and "grievance"). Additionally, he alleges that the Problem Review Procedure is inherently defective, denying due process by excluding counsel from the factfinding hearing.

■ Francis has rights created by the implied contract, but these rights are limited by the terms of the Manual that gave them birth. The Supreme Court has held that a government employee who gains by statute the security of being discharged only for "cause" must abide by the procedural requirements of that same statute. In *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Court stated quite succinctly that:

> [Where] the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant * * * must take the bitter with the sweet.

*Id.* at 153–54, 94 S.Ct. at 1643–44.

Likewise, Francis was bound by the procedures established in his employee Manual. Francis's file contains an acknowledgement, signed by him, that the Manual may be modified unilaterally and that "current personnel policies take precedence." He cannot now be heard to contest the change in the Manual whereby the Problem Review Procedure became the avenue available to redress his grievance.

■ Francis's failure to attend the factfinding hearing caused noncompliance with the procedure specified. He failed to perform his portion of the implied contract regarding termination. Thus he is estopped from asserting that he suffered a deprivation of either a contractual expecta-

tion or a constitutionally protected entitlement. Moreover, we agree with the trial court that excluding attorneys for both sides from the factfinding hearing is not in itself a denial of procedural due process. *See Rosewitz v. Latting*, 689 F.2d 175 (10th Cir.1982).

In fact, Francis received more than the minimal procedure required by the Manual. The Hospital administration specifically offered to orient him to all floors to facilitate his "floating" as needed. He refused this offer. His final termination came about because he refused to sign a letter of agreement to abide by Hospital policy and procedure. Thus the ultimate breach was his own. The trial court correctly concluded that summary judgment was in order because there remained no genuine issue of material fact, and the Hospital was entitled to judgment as a matter of law. NMSA 1978 Civ.P.R. 56(C) (Repl.Pamp.1980); *See Great Western Construction Co. v. N.C. Ribble Co.*, 77 N.M. 725, 427 P.2d 246 (1967).

## II. The "Floating" Policy

Francis challenges the right of the Hospital to discharge him for refusing to follow this policy because, he contends, it was never properly authorized. If the policy was *ultra vires*, and thus void, then it could not be the basis for his termination. In support of his position, Francis cites the statutory grant of power to the board of trustees of any county-municipal hospital. NMSA 1978, § 3–44–4(C) (Repl.Pamp.1984).

■ Francis concedes that the "floating" policy was in writing, but maintains that it was never formally adopted by the Hospital's Board of Directors (Board). The trial court addressed this question in its memorandum opinion, ruling that the Board had validly delegated to the Administrator the authority to implement the daily operation of the Hospital. Francis argues nevertheless that the Board's bylaws require that

ployee terminable "At will". *See Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 791, 635 P.2d 992, 994 (Ct.App.1981). His property interest,

therefore, is not a right to continued employment, but only a right to proper procedure in his termination.

all "policies" be issued by the Board. Since "floating" is termed a "policy," he concludes, it is invalid unless expressly adopted by the Board. We agree with the trial court that this argument is without merit. The "floating" policy was promulgated by the nursing administration, pursuant to authority delegated by the Administrator, who in turn was acting within the scope of his charge from the Board.

### III. Public Policy

Francis maintains that his refusal to "float" was mandated by the ethical considerations embodied in the Nursing Practice Act. NMSA 1978, § 61–3–1 to –30 (Repl. Pamp.1986). He felt that the health and safety of the orthopedic patients would be jeopardized by his incompetence if he were charge nurse on their floor. Thus, he claims that his termination was tortious, his discharge wrongful as defined in *Vigil v. Arzola,* 102 N.M. 682, 699 P.2d 613, (Ct.App.1983), *rev'd in part,* 101 N.M. 687, 687 P.2d 1038 (1984).

■ We do not agree that the Hospital's "floating" policy is necessarily something that "public policy would condemn." *Id.* at 689, 699 P.2d at 620. Requiring a nurse to "float" is not the kind of unlawful or seri-

ous misconduct for which recognition of the tort of wrongful discharge was intended. Moreover, the Hospital is quite correct in responding that "floating" in fact implements another important public policy, that of maintaining an adequate staff on all patient floors in a cost-effective manner.

Prior to his discharge, Francis was presented with the opportunity for orientation to floors where he might "float" in the future to overcome his feeling of incompetence. This was done in deference to his ethical scruples, yet Francis refused to find out whether he could ever become comfortable with "floating." Because he declined this deference to his scruples, he cannot complain now that he was fired for following them.

For the foregoing reasons, the judgment of the district court is affirmed.

IT IS SO ORDERED.

FEDERICI and STOWERS, JJ., concur.