825 P.2d 1241

James William ROTH, d/b/a Bill Roth Plastering, Plaintiff–Appellant,

v.

Carolyn THOMPSON, Leland Peach, Carolyn Sue Thompson Revocable Trust, Defendants–Appellees.

No. 19708.

Supreme Court of New Mexico.

Jan. 23, 1992.

Campbell, Carr, Berge & Sheridan, P.A., William P. Slattery, Santa Fe, for plaintiff-appellant.

Sommer, Udall, Othmer, Hardwick & Garcia, P.A., Jack N. Hardwick, Santa Fe, for defendants-appellees.

## OPINION

FRANCHINI, Justice.

In this appeal we consider the statutory proviso that contractors comply with licensing requirements as a prerequisite to utilizing the courts to file or foreclose mechanic's liens. Plaintiff Roth was the qualifying party for a GS–30 license held by Rocky Mountain Plastering until January 1982, at which time he was deleted as the qualifying party and the license expired. A GS–30 license holder may perform plastering, stuccoing, and lathing services.

In November 1987, defendants Peach and Thompson (Thompson Defendants) entered into a contract with LaFortune for construction of a residence on real property owned by the Carolyn Sue Thompson Revocable Trust. In April 1988, LaFortune subcontracted with Roth to perform plastering work on the Thompson residence. Roth performed under the subcontract until July 1988, at which time LaFortune ceased work on the residence due to a dispute with the Thompson Defendants.

During June and July of 1988, Roth sat for and passed the tests required for a new GS–30 license. On August 9, 1988, the Construction Industries Division of the New Mexico Regulation and Licensing Department (CID) received an application for a GS–30 license from Roth for a business known as Bill Roth Plastering. On August 29, 1988, the CID issued a GS–30 license to Bill Roth Plastering with Roth as the qualifying party.

Roth filed a Claim of Lien for $6,750.00 upon the Thompson residence on August 9, 1988, the same day his license application was received by CID. In August 1989, Roth filed an action in district court against the Thompson Defendants seeking to foreclose the lien. On the Thompson Defendants' motion, the district court entered summary judgment against Roth, finding no genuine issue of material fact to preclude a holding that Roth did not substantially comply with NMSA 1978, Section 60–13–30 (Repl.Pamp.1989).

On appeal Roth argues: (1) the trial court applied the incorrect legal standard in determining he had not substantially complied with Section 60–13–30; and (2) the trial court erred in determining there was no genuine issue of material fact as to whether he had substantially complied with the licensing act. We affirm the trial court's grant of summary judgment.

## DISCUSSION

*Whether the trial court applied the correct legal standard in determining Roth had not substantially complied with Section 60–13–30.*

Section 60–13–30 provides:

A. No contractor shall act as an agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act * * * without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

B. Any contractor operating without a license as required by the Construction Industries Licensing Act shall have no right to file or claim any mechanic's lien as now provided by law.

■ The chief aim of statutory construction is to give effect to the intent of the legislature. *In re Rehabilitation of Western Investors Life Ins. Co.*, 100 N.M. 370, 373, 671 P.2d 31, 34 (1983). We recently discussed the purpose of the Construction Industries Licensing Act, NMSA 1978, Sections 60–13–1 to 60–13–59 (Repl.Pamp.1984) (the Act), in *Mascarenas v. Jaramillo*, 111 N.M. 410, 806 P.2d 59 (1991). In *Mascarenas*, we determined:

[t]he object sought to be accomplished by the Act is a healthy, ordered market in

which consumers may contract with competent, reliable construction contractors who have passed the scrutiny of a licensing division. The wrong to be remedied is the exploitation of the public by incompetent and unscrupulous contractors who are unable or unwilling to obtain a license.

*Id.* at 413, 806 P.2d at 62. In order to protect the public, our legislature has chosen to harshly penalize unlicensed contractors by denying them access to the courts to collect compensation for work performed. *Triple B Corp. v. Brown & Root, Inc.,* 106 N.M. 99, 102, 739 P.2d 968, 971 (1987). This is true even with respect to work which has been fully and satisfactorily performed. *Id.* at 101, 739 P.2d at 970.

■ This court, however, has been reluctant to construe the licensing statute more broadly than necessary to accomplish the purpose of the Act. In *Peck v. Ives,* 84 N.M. 62, 499 P.2d 684 (1972), we characterized the statutory provisions then in place, which were identical to the provisions of Section 60–13–30, as bar-to-suit provisions and, following *Latipac, Inc. v. Superior Court of Marin County,* 64 Cal.2d 278, 49 Cal.Rptr. 676, 411 P.2d 564 (1966), adopted the doctrine of substantial compliance to determine whether a contractor has complied with the licensing requirements to the degree necessary to avoid being barred from bringing suit. The elements of the substantial compliance doctrine are: (1) the contractor held a valid license at the time of contracting; (2) the contractor readily secured a renewal of that license; and (3) the responsibility and competence of the contractor's managing officer were officially confirmed throughout the period of performance of the contract. *Peck,* 84 N.M. at 65, 499 P.2d at 687.

We find nothing in the record before us to indicate that the trial court inappropriately applied the substantial compliance doctrine. The court recognized the public policy considerations in requiring adherence to licensing requirements and the legislative intent in promulgating those requirements that the public be protected from incompetent and irresponsible builders. *Id.* at 66, 499 P.2d at 688. While the trial court placed great emphasis on the fact that Roth was unlicensed at the time he entered into the contract with LaFortune, we find no error in such emphasis. That a contractor held a valid license at the time the contract was entered into is a crucial element of the substantial compliance doctrine. *Id.* at 65, 499 P.2d at 687.

■ Additionally, Roth contends that his cause of action did not arise until after he had satisfied all of the requirements necessary to obtain a new GS–30 license, and thus he was in substantial compliance. This argument hinges on the language of Subsection 60–13–30(A) which bars suit absent allegation and proof that the "contractor was a duly licensed contractor at the time the alleged cause of action arose." Roth correctly observes that the licensing provision at issue does not define when the cause of action arises, suggests a conflict in New Mexico case law as to the circumstances giving rise to the cause of action, and claims substantial compliance under any of the conflicting scenarios.

The Thompson Defendants argue that it is inconsequential when the cause of action arose, give primacy to the language of Subsection 60–13–30(B) which prohibits any contractor operating without a license from filing or claiming any mechanics lien, and urge that under Subsection 60–13–30(B) Roth never had a valid cause of action in the first place since he was not licensed either when he entered into the contract or performed the work.

To adopt Roth's position would effectively vitiate the general language of Subsection 60–13–30(B), while recognition of the Thompson Defendants' position tends to render the requirements of Subsection 60–13–30(A) surplusage. The flaw in the parties' analysis is their failure to consider the provisions of Section 60–13–30 as a whole. *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173

(1985) (in discerning legislative intent we examine a statute in its entirety and construe each part in connection with every other part to produce a harmonious whole).

To resolve this problem, we first return to Roth's suggestion that New Mexico case law is in conflict with regard to when the cause of action arises in mechanic's lien litigation. Roth identifies several early cases in support of the proposition that the cause of action arises upon the filing of the lien. *Ackerson v. Albuquerque Lumber Co.,* 38 N.M. 191, 193, 29 P.2d 714, 716 (1934) (in New Mexico the lien arises upon the filing of a claim for record); *Ford v. Springer Land Ass'n,* 8 N.M. 37, 48–49, 41 P. 541, 544 (1895) (notice of claim of lien characterized as the foundation of the action), *aff'd on other grounds,* 168 U.S. 513, 18 S.Ct. 170, 42 L.Ed. 562 (1897); *Texas S.F. & N. R.R. v. Orman,* 3 N.M. 652, 654, 9 P. 595, 596 (1886) (notice and claim of lien prerequisites to the creation and enforcement of any lien whatever). In contrast to Roth's position, we do not read these cases as addressing when the cause of action actually arises, so much as they emphasize the necessity to comply with the statutory requirements to perfect a mechanic's lien.

A second view is that the cause of action arises upon the performance of the work or furnishing of the materials which are the subject of the lien. *Weggs v. Kreugel,* 28 N.M. 24, 26, 205 P. 730, 730 (1922). The court's conclusion in *Weggs* was based on consideration of statutory language similar to NMSA 1978, Section 48–2–2 (Cumm. Supp.1991), which provides that "[e]very person performing labor upon, providing or hauling equipment, tools or machinery for, or furnishing materials to be used * * * has a lien upon [the subject property] * * * for the work or labor done * * * * *" The court concluded "[t]hat a claim of lien be prepared and filed is an essential requisite under the statute, but it is by no means the foundation of the lien * * * * The lien is really founded upon the doing of the work or the furnishing of the material * * * * *" *Weggs,* 28 N.M. at 26, 205 P. at 730 (citation omitted).

A fundamental rule of statutory construction is that all provisions of a statute, together with other statutes in pari materia, must be read together to ascertain the legislative intent. *Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 225, 668 P.2d 1101, 1102 (1983). We find further support for the *Weggs* analysis in NMSA 1978, Section 48–2–5(A) (Cumm. Supp.1991), which establishes preference over other encumbrances which "may have attached subsequent to the time when the building, improvement or structure was commenced, work done or materials were commenced to be furnished * * * * *" The legislature's determination that the commencement of performance is the act that establishes preference over other encumbrances is consistent with the position that the cause of action arises at the same instance.

This position also lends itself to a reading of Section 60–13–30 which gives meaning to both Subsections (A) and (B). The general language of Subsection (B) which bars suit by any contractor "operating" without a license is not limited or vitiated by Subsection (A) when performance is understood as the determinative event in the accrual of the cause of action. We therefore hold that a contractor's cause of action for the collection of compensation arises upon performance and distinguish *Ackerson, Ford,* and *Orman* to the extent they may be construed to hold otherwise.

*Whether the trial court erred in determining there was no genuine issue of material fact as to whether Roth had substantially complied with the licensing requirement.*

Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). The movant need only make a prima facie showing that he is entitled to summary judgment. *Goodman v. Brock,* 83 N.M. 789, 792, 498 P.2d 676, 679 (1972). Upon the

movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits. *Dow v. Chilili Coop. Ass'n,* 105 N.M. 52, 54, 728 P.2d 462, 464 (1986). On review, we consider the whole record for evidence that puts a material fact at issue. *Gardner–Zemke Co. v. State,* 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper. *Id.*

As our recitation of the facts reveals, the essential facts in this case are not in dispute. We also conclude that the trial court properly determined the Thompson Defendants were entitled to summary judgment as a matter of law. Roth fails to satisfy any of the elements of the substantial compliance doctrine set forth in *Latipac* and *Peck.* He was not licensed at the time he entered into the contract, his efforts to secure a new license when his performance under the subcontract was near completion do not satisfy the requirement that he readily secure "renewal" of his license. With regard to the third element, Roth's efforts to secure a license did not confirm his responsibility and competence throughout the period of performance. In *Latipac,* this element was satisfied because, although the contracting company's license had lapsed, the managing officer of that company was the qualifying party for a separate corporation possessing a valid contractor's license throughout the period of performance in that case. *Latipac,* 49 Cal.Rptr. at 682, 411 P.2d at 570. Here, there is no evidence of a managing officer or other entity officially confirming Roth's competence.

For all of the above reasons, the entry of summary judgment in favor of the Thompson Defendants is affirmed.

IT IS SO ORDERED.

BACA and FROST, JJ., concur.