871 P.2d 17

**Wilma WEBB, Plaintiff–Appellee,**

v.

**VILLAGE OF RUIDOSO DOWNS,
a New Mexico Municipality,
Defendant–Appellant.**

**No. 14354.**

Court of Appeals of New Mexico.

Feb. 7, 1994.

Certiorari Denied March 18, 1994.

Gary C. Mitchell, Gary C. Mitchell, P.C., Ruidoso, for plaintiff-appellee.

J. Robert Beauvais, J. Robert Beauvais, P.A., Ruidoso, for defendant-appellant.

## OPINION

HARTZ, Judge.

The disposition of this appeal turns on whether the New Mexico statute authorizing municipalities to enact ordinances establish-ing merit systems, NMSA 1978, Section 3-13-4 (Repl.1985), permits such ordinances to apply to municipal officers. We hold that it does not and therefore reverse.

Wilma Webb was appointed clerk-treasurer of the Village of Ruidoso Downs in 1982 by Mayor J.C. Day. In 1986 Mayor J.C. Harris appointed a new clerk-treasurer. Webb then sued the Village for damages for wrongful termination. The district court ruled in her favor, awarding $25,676.46. The essential facts were not contested at trial. The dispute concerned the legal authority of the Village to terminate Webb.

The district court ruled that Webb was covered by the Village's merit system ordinance and that pursuant to the ordinance she had a contract of employment with the Village. Because Webb's termination was not in compliance with the merit system ordinance, the court concluded that the termination was wrongful. The Village does not dispute that it failed to comply with its merit system ordinance in terminating Webb. Also, we assume, without deciding, that the ordinance by its terms covers Webb. Our reason for reversal is that Webb was a municipal officer and the New Mexico statute authorizing municipalities to enact merit system ordinances for municipal employees does not authorize such ordinances to cover municipal officers.

Webb's strongest argument to the contrary derives from the language of NMSA 1978, Section 3-11-6(D) (Repl.1985), which states:

Subject to the limitation of a merit system ordinance adopted as authorized in Section 3-13-4 NMSA 1978:

(1) the governing body may discharge an appointed official or employee by a majority of all the members of the governing body;

(2) the mayor may discharge an appointed official or employee upon the approval of a majority of all the members of the governing body; or

(3) the mayor may suspend an appointed official or employee until the next regular meeting of the governing body at which

time the suspension shall be approved or disapproved by a majority of all the members of the governing body. If the suspension of the appointed official or employee is disapproved by the governing body, the suspended appointed official or employee shall be paid the compensation he was entitled to receive during the time of his suspension.

This paragraph provides for the discharge of "an appointed official or employee," but conditions the power of discharge by making it "[s]ubject to the limitation of a merit system ordinance." Webb contends that this means that the right to discharge an appointed official "is clearly subject to the limitations of a Merit System Ordinance."

On the other hand, Section 3–13–4(A) states: "Any municipality may establish by ordinance a merit system for the hiring, promotion, discharge and general regulation of municipal *employees*." (Emphasis added.) Section 3–13–4 makes no reference to public officials or officers.

Both Section 3–11–6(D) and Section 3–13–4 were enacted by 1965 New Mexico Laws, Chapter 300. Because the language of Section 3–11–6(D) establishes that the drafters of the legislation were well aware of the distinction between municipal officials and municipal employees, one must question why Section 3–13–4 mentions only employees, and not officials or officers, if merit system ordinances are authorized to include the latter.

Moreover, the implication of the language in Section 3–11–6(D) that merit system ordinances apply to appointed officials is not as strong an implication as Webb suggests. To avoid totally the inference drawn by Webb, the legislature would have needed to replace Section 3–11–6(D) by two paragraphs. One would relate to appointed officials, the other would relate to employees. The language of the two paragraphs would otherwise be identical except that the paragraph related to appointed officials would not include the introductory language: "Subject to the limitation of a merit system ordinance." The obvi-

ous disadvantage of this two-paragraph alternative to Section 3–11–6(D) is that it repeats so much language. The drafters could quite reasonably prefer the course actually chosen—combining appointed officials and employees in one paragraph—simply for economy of language. The present language of Section 3–11–6(D) would certainly be superior to the two-paragraph alternative if the drafters felt that their use of only the term "employees" in Section 3–13–4 would make clear that merit systems would not cover appointed officials and therefore would preclude any inference that the reference to merit system ordinances in Section 3–11–6(D) meant that such ordinances covered appointed officials.

■ Construing the word "employees" in Section 3–13–4 as not including appointed officers conforms to common usage. "Provisions referring to 'employees' are generally held not to include officers." Charles S. Rhyne, *The Law of Local Government Operations* § 13.2, at 220 (1980) [hereinafter "Rhyne"]; *accord* L.S. Tellier, Annotation, *Constitutional or Statutory Provision Referring to "Employees" as Including Public Officers*, 5 A.L.R.2d 415, 416 (1949) ("[T]he term 'employee,' or 'workman,' used in a constitutional, statutory, or charter provision in referring to those performing services for a state or political subdivision thereof, is seldom construed so as to include public officers unless the provision in question expressly so stipulates."); *cf. Candelaria v. Board of County Comm'rs*, 77 N.M. 458, 423 P.2d 982 (1967) (distinguishing "public officer" and "workman"). This general rule specifically applies to the construction of merit system ordinances. In *Sioux Falls Municipal Employees Ass'n v. City of Sioux Falls*, 89 S.D. 298, 233 N.W.2d 306 (1975), the court unanimously held that a city ordinance establishing a civil service system was invalid to the extent that it attempted to include officers. State law permitted ordinances establishing civil service systems for "municipal employees, policemen, and firemen." *Id.* 233 N.W.2d at 309;[1] *see Black v. Sutton*, 301 Ky. 247, 191 S.W.2d 407, 409–10 (1945) (Merit

---

1. Similarly to this case, the losing party's argument rested in large part on a statute stating "All appointive officers of a municipality governed by a mayor and common council shall be appointed

by the mayor with the approval of the council * * * subject to the provisions of the civil service applying to employees, policemen, and firemen."

system "statute should not be extended to officers under the guise that they are employees for the all too apparent purpose of perpetuating them in office."); *Cathy v. Prober*, 195 A.D.2d 999, 600 N.Y.S.2d 561 (1993) (town building inspector "was not a public employee, but a public officer"); *Gamblin v. Town of Bruceton*, 803 S.W.2d 690, 692–93 (Tenn.Ct.App.1990) (town recorder was a public officer and not entitled to the benefit of town's employee personnel policies established by ordinance).

■ In addition, there is good reason to believe that the legislature made a deliberate choice in Section 3–13–4 when it referred only to "employees," and not appointed officials, as being covered by municipal merit system ordinances. Typically, merit system ordinances do not govern appointed officials. Professor Reynolds has written:

> The merit system in effect in most municipalities involves the classification of the various positions by a local civil service commission. This commission has great discretion in classifying the various kinds of municipal employment, and its designations will be judicially overturned only upon a strong showing of arbitrary or capricious action. But certain government workers are exempt from the civil service: elected officials necessarily are exempt, and so in general are most workers who are considered officers rather than employees. Certainly, the civil service provisions are inapplicable to all officers who have a definite term of office, or who are heads of departments.

Osborne M. Reynolds, Jr., *Handbook of Local Government Law* § 88, at 264–65 (1982) (footnotes omitted); *see* 3 Charles R.P. Keating & Gail A. O'Gradney, *The Law of Municipal Corporations* § 12.76 (3d ed. 1990); Rhyne, *supra*, § 13.52, at 285. The policy behind the exemption of appointed officials from merit system ordinances is stated in *Carlson v. Bratton*, 681 P.2d 1333, 1336 (Wyo.1984):

> [T]o force the winner of a political election to be saddled with a member of his imme-

diate executive staff with whom he cannot work, is to block the efficiency of that political system. The governing body itself is of course a check on the powers of the mayor's office; but the legislature recognized the necessity for the mayor to retain control over his or her policy making employees.

In sum, we conclude that Section 3–13–4 authorizes only merit system ordinances that apply to employees. Municipalities have no authority to protect appointed public officers through such ordinances.

■ We recognize that often there may be difficulty in determining whether a particular position is an appointed office. *See Pollack v. Montoya*, 55 N.M. 390, 393–94, 234 P.2d 336, 338–39 (1951) (stating test for determining whether public employment is a public office). Here, however, there is no such difficulty. NMSA 1978, Section 3–12–4 (Repl.1985), states:

> A. The governing body of each municipality shall provide for the office of clerk, treasurer and police officer. The offices of clerk and treasurer may be combined and one person appointed to perform both functions.
>
> B. The governing body may also provide for the office of an attorney.
>
> C. The governing body may provide for deputy appointed officials who may exercise the powers granted the appointed officials.

This statute, which was also enacted by New Mexico Laws 1965, Chapter 300, expresses a legislative determination that the position of municipal clerk-treasurer is an office. Given that the clerk-treasurer often occupies the highest full-time position in a municipal government for which the mayor and council members serve only part-time, the characterization of the position as an office is appropriate. The legislature could reasonably decide that each elected administration should have the authority to select the individual in charge of the day-to-day administration of municipal government.

We conclude that Webb, as Village clerk-treasurer, was an appointed official to whom

*Id.* 233 N.W.2d at 310 (quoting S.D.Codified Laws § 9–14–3 (1967)).

the Village had no authority to apply its merit system ordinance. Because Webb's theory of recovery was founded on her being covered by the merit system ordinance, we reverse the district court judgment and remand for entry of judgment in favor of the Village.

**IT IS SO ORDERED.**

BLACK, J., concurs.

CHAVEZ, J., dissents.

**CHAVEZ, Judge (dissenting).**

I respectfully dissent. I interpret Sections 3–13–4 and 3–11–6(D) to mean that the discharge of Webb is dictated by the merit system ordinance adopted by the Village. Since the Village does not dispute that it failed to comply with the merit system ordinance in terminating Webb, I would affirm the trial court's decision.

The issue is whether the word "employees" as used in Section 3–13–4 includes "appointed officials." "Employees" is not defined in this section and the statutory language of Section 3–13–4 provides little guidance as to its meaning. Words not statutorily defined should be given their ordinary meaning absent clear and express legislative intention to the contrary. *See Whitely v. New Mexico State Personnel Bd.,* 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993); *State v. Ruffins,* 109 N.M. 668, 671, 789 P.2d 616, 619 (1990) ("When a statute does not define its terms, general rules of statutory construction dictate that we interpret those terms in the common, ordinary sense.") The ordinary meaning of the word "employee" is "a person who works for another in return for financial or other compensation." The American Heritage Dictionary of the English Language 428 (1973). Clearly, under the ordinary meaning of the word, Webb is an "employee."

Furthermore, Section 3–11–6(D) addresses the removal of an appointed official by stating that such removal is "[s]ubject to the limitation of a merit system ordinance adopted as authorized in Section 3–13–4." The legislature would not have allowed Section 3–11–6(D) to expound on how appointed officials are to be removed if it did not mean to give Section 3–11–6(D) the authority to do

so under Section 3–13–4. Therefore, I would conclude that the word "employee" under Section 3–13–4 is a general term which includes those that are also employed as appointed officials by the governing body.

Additionally, in construing these statutes, the chief aim is to give effect to the intent of the legislature. *Roth v. Thompson,* 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992). Although a court should not extend a statute's coverage beyond what was intended, the majority has narrowed the coverage of these statutes short of the point where I believe the legislature intended it should extend. As previously stated, I believe the legislature intended the word "employees" to include "appointed officials." This interpretation of the legislature's intent is consistent with my interpretation of the purpose of these statutes: to provide a reasonable approach to an appointed official's removal. Webb argues that the municipal government system established by the legislature indicates that the spoils system is gone and "that it is the desire of the people of the State of New Mexico that those employees who do competent work not be replaced at the whim of a mayor and/or new city council." On the other hand, the Village argues and the majority adopts the view that "[t]o force the winner of a political election to be saddled with a member of his immediate executive staff with whom he cannot work, is to block the efficiency of that political system." Neither result would occur under this interpretation. The mayor would not be saddled with a previous appointed official with whom he cannot work, since the appointed official may be discharged if the merit system ordinance is followed. However, mandatory compliance with the merit system ordinance also prohibits the mayor from discharging competent personnel at his whim. Simply put, these statutes provide a procedure, a middle ground so to speak, by which an appointed official may be removed from office. Because I believe this to be the correct interpretation of these statutes, I cannot concur in the opinion.