912 P.2d 304

J. Felipe SILVA, Plaintiff–Appellant,

v.

TOWN OF SPRINGER, Carlos Gutierrez, William E. Jump, and Gary Jones, Individually and in their Official Capacity as Members of the Springer Town Council, Defendants–Appellees.

Linda E. BACA, formerly Linda E. Herrera, Plaintiff–Appellant,

v.

TOWN OF SPRINGER, Carlos Gutierrez, William E. Jump, and Gary Jones, Individually and in their Official Capacity as Members of the Springer Town Council, Defendants–Appellees.

Docket No. 16,015.

Court of Appeals of New Mexico.

Jan. 29, 1996.

Certiorari Denied Feb. 22, 1996.

Eric D. Dixon, Portales, for Plaintiffs–Appellants.

Gail S. Stewart, Gallagher, Casados & Mann, P.C., Albuquerque, for Defendants–Appellees, Town of Springer, Carlos Gutierrez, William E. Jump, and Gary Jones, in their official capacities.

John P. Davidson, Law Offices of John P. Davidson, Raton, for Defendants–Appellees, Carlos Gutierrez, William E. Jump, and Gary Jones, in their individual capacities.

## OPINION

DONNELLY, Judge.

1. Appellants, J. Felipe Silva and Linda E. Baca, appeal from an order granting summary judgment in favor of Appellees and dismissing their claims of breach of contract, breach of implied contract, wrongful discharge in violation of public policy, interference with contractual relations, prima facie tort, conspiracy, and violation of civil rights contrary to 42 U.S.C. Section 1983 (1988). Baca also appeals the dismissal of her additional claim against Appellees alleging intentional infliction of emotional distress. We affirm in part and reverse in part.

## FACTS

2. Appellants were both employed by the Town of Springer (Town). Silva was the Public Works Director. Baca was the Clerk–Treasurer for the Town. Following the election of new trustees for the Town, at a town meeting on March 16, 1992, three newly-elected trustees, Carlos Gutierrez, William E. Jump, and Gary Jones, voted not to reemploy Appellants, and, by a vote of three-to-one, the positions held by Appellants were declared to be open.

3. Prior to Appellants' dismissal, the Town had adopted Ordinance No. 272, a personnel merit system, which regulated the method of hiring and dismissal of permanent employees. The ordinance, by its terms, applied to "all employees except those who are specifically placed in the unclassified service," and directed that prior to the termination of a permanent employee, the employee was to be provided with "a written statement of reasons for such action." The ordinance also set forth a progressive, disciplinary process and required that permanent employees "whose work performance [is] less than satisfactory shall be given a specific period of time for improvement not to exceed six months." It is undisputed that the Town did not apply this termination procedure to Appellants.

4. Subsequent to their dismissal, Appellants filed separate lawsuits against the Town, and against Gutierrez, Jump, and Jones, both in their official and individual capacities. The lawsuits alleged, inter alia, that Appellants had been wrongfully discharged in violation of public policy, and that Appellees were liable to Appellants for breach of express contract, breach of an implied contract, conspiracy, tortious conduct, and violation of Appellants' civil rights. By stipulation of the parties, the two lawsuits were consolidated. Thereafter, the Town and each of the Appellees, both in their official capacities and individually, filed motions for summary judgment. Appellants filed responses to the motions, together with affidavits in opposition to the motions. After a hearing, the trial court notified counsel by letter of its decision to dismiss Appellants' claims, granted the motions for summary

judgment, and entered an order dismissing Appellants' claims with prejudice.

*STANDARD OF REVIEW*

■ 5. The standard of review governing appeals from an order granting summary judgment is well known. An award of summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Perez,* 104 N.M. 664, 665–66, 726 P.2d 341, 342–43 (1986). Once a movant makes a prima facie showing of his or her entitlement to an order of summary judgment, the burden shifts to the party opposing the motion to demonstrate the existence of disputed material facts which would require a trial on the merits. *Baer v. Regents of Univ. of Cal.,* 118 N.M. 685, 687, 884 P.2d 841, 843 (Ct.App.1994). In reviewing an appeal from an order granting summary judgment, we examine the record to ascertain whether there are triable issues of material fact or evidence which puts a material fact in issue. *Gillin v. Carrows Restaurants, Inc.,* 118 N.M. 120, 122, 879 P.2d 121, 123 (Ct.App. 1994).

*APPELLANTS' CLAIMS FOR BREACH OF CONTRACT*

6. We first examine Appellants' claims against the Town and each of the Appellees, while acting in their official capacities as town trustees. Appellants argue that the Town is liable for damages resulting from a breach of a written contract or, alternatively, for breach of an implied contract of employment. Appellants concede that under NMSA 1978, Section 37–1–23(A) (Repl. Pamp.1990), governmental entities are immune from suit for breach of contract, except for those claims that are based on valid written contracts; however, they argue that Ordinance No. 272 constitutes a written contract relating to each of their positions, that the ordinance describes their positions as classified employees and precludes their dismissal, except in accordance with the terms and procedures of the ordinance. Silva argues that his position of "Public Works Director" was covered under the personnel merit system ordinance, and that the former town administrator informed him he was a classified employee protected from summary dismissal under the personnel merit ordinance.

7. In advancing her claims, Baca argues that prior to accepting a promotion from her previous position to that of town clerk-treasurer, she asked the town administrator whether she would continue to be treated as a classified employee and was informed that she would be protected from arbitrary termination. She contends that she accepted the promotion to clerk-treasurer in reliance upon this representation from the former town administrator, and that the Town is estopped from dismissing her, except for cause and pursuant to the provisions of the personnel merit ordinance.

8. In response to these arguments, Appellees assert that the town ordinance cannot suffice as a written contract to satisfy the requirements of Section 37–1–23(A), and even assuming, arguendo, that the ordinance could be interpreted to constitute a written contract, under the undisputed facts herein, the positions of each Appellant were specifically exempted from the provisions of the town personnel merit ordinance.

■ 9. In addressing the respective claims of Silva and Baca, the relevant inquiry is whether either was entitled to the rights and protections accorded classified employees under the personnel merit ordinance enacted by the Town. Under the ordinance in question, we conclude that unless the positions held by Appellants were specifically exempted from the provisions of the ordinance or the ordinance is determined as a matter of law not to apply to the positions held by Appellants, the rights contained in the ordinance became a part of their contract of employment. Cf. *Lukoski v. Sandia Indian Management Co.,* 106 N.M. 664, 666, 748 P.2d 507, 509 (1988) (provisions of employee handbook may be determined to have become part of employment agreement); *Francis v. Memorial Gen. Hosp.,* 104 N.M. 698, 699, 726 P.2d 852, 853 (1986) (provisions of personnel policy manual may modify contract of employment).

■ 10. The town ordinance expressly exempts from its provisions, among others,

the positions of clerk-treasurer, field supervisor, and "persons employed under contract to supply professional or technical services for the town." Baca concedes that if her claim "was based solely on protections afforded under Ordinance 272, then her claim would . . . fail" under this Court's decision in *Webb v. Village of Ruidoso Downs,* 117 N.M. 253, 871 P.2d 17 (Ct.App.), *cert. denied,* 117 N.M. 524, 873 P.2d 270 (1994). However, she argues that because prior to accepting such appointment she was assured by the former town administrator and several members of the town council that she would be accorded the protections of the ordinance, the Town should be estopped from terminating her without extending the provisions of the ordinance on her behalf. We think the trial court properly dismissed Baca's claims against the Town and each of the Appellees in their official capacities, and that Baca's attempts to distinguish the result in *Webb* from the instant case are unavailing.

11. In *Webb* this Court held that the position of clerk-treasurer for the Village of Ruidoso Downs was an appointed official as a matter of state statute and thus could not be included by a municipality within the protections accorded village employees under a personnel merit system ordinance. *Id.,* 117 N.M. at 256–57, 871 P.2d at 20–21. In addition, the ordinance enacted by the Town of Springer, unlike that of Ruidoso Downs, specifically exempts from coverage the position of clerk-treasurer.

■ 12. Alternatively, Baca argues that even if her position is an exempt position under the personnel merit ordinance, the Town is estopped from raising this defense because she was told the ordinance would be extended to apply to her and that she relied upon these representations. This argument, however, is answered by the decision of our Supreme Court in *Trujillo v. Gonzales,* 106 N.M. 620, 621–22, 747 P.2d 915, 916–17 (1987). In *Trujillo* the plaintiff brought a breach of contract suit against two Taos county commissioners alleging that they had breached a written employment contract. On appeal, our Supreme Court held that the action of the two commissioners purporting to extend "an offer of a two-year employment [agreement to the plaintiff] was without statutory authority and, thus, [was] not a valid act capable of binding the county." *Id.* at 621, 747 P.2d at 916 (citing NMSA 1978, Section 10–15–3 (Repl.Pamp.1983)). The *Trujillo* Court also noted, "Moreover, a contract unlawfully entered into, though in good faith, creates no liability on the part of the body politic to pay for it, even in quantum meruit for goods furnished or labor performed." *Id.* at 622, 747 P.2d at 917; *see also Bigler v. Graham County,* 128 Ariz. 474, 477, 626 P.2d 1106, 1109 (Ct.App.1981) ("Persons dealing with public offices are bound . . . to know the extent and limits of their power and no right can be acquired except that predicated upon authorized acts of such officers."). *See generally* 63A Am.Jur.2d *Public Officers and Employees* § 298 (1984).

■ 13. Contrary to the result reached above involving Baca, however, we think Silva's arguments and response to Appellees' motions for summary judgment raise material disputed issues of fact which preclude an award of summary judgment as to this claim. Silva argues he did not occupy the position of "Field Supervisor," that his official job title was that of "Public Works Director," and that the question of whether this position was that of a field supervisor or department head so as to be exempted from the protections afforded by the personnel merit ordinance constitutes a disputed factual issue. We agree.

14. In response to Appellees' motions for summary judgment, Silva, among other things, relied on his affidavit and his deposition. As set forth in both his affidavit and deposition, the position held by him at the time he was terminated from employment was "Public Works Director," not that of "Field Supervisor." Town records attached as exhibits to Silva's deposition also describe the position held by him as that of "Public Works Director." As stated in his deposition, Silva's duties entailed performing basic engineering design, carrying out administrative functions, overseeing the operation of the town water system, supervising the removal of snow within the town, and overseeing street repair work.

15. The Town's personnel merit system exempts the position of "Field Supervisor" from the classified service. The ordinance, however, specifically directs that the administration and application of personnel policies apply to all Town employees, except those specifically enumerated. In *Webb* this Court held that the legislature, in enacting NMSA 1978, Section 3-13-4 (Repl.Pamp.1995), authorized municipalities to adopt personnel merit system ordinances for the benefit of certain employees. *Id.,* 117 N.M. at 256, 871 P.2d at 20.

16. Silva's affidavit states that "[t]here were differences in my position as 'Public Works Director' and the position of 'Field Supervisor'." His affidavit also indicates that "[a]t no time during my employment with the town of Springer did anyone construe or tell me in any way that I was not entitled to the ... merit protection pursuant to [Ordinance] 272 including: notice of unsatisfactory work ...; progressive discipline ...; notice and opportunity to be heard before termination; [and] written reasons for my termination." Additionally, the affidavit of Lloyd Miles, former town administrator and who was Silva's immediate supervisor, recited that Silva was hired as public works director and that "[a]t no time was Mr. Silva ever a 'field superintendent'."

17. In performing our task of deciding whether summary judgment was proper, we look to the whole record and take note of any evidence which places a material fact in issue. *C & H Constr. & Paving Co. v. Citizens Bank,* 93 N.M. 150, 158, 597 P.2d 1190, 1198 (Ct.App.1979); *see also Espinoza v. Town of Taos,* 120 N.M. 680, 682, 905 P.2d 718, 720 (1995) ("Summary judgment is inappropriate when resolution of a factual dispute is required to determine a legal question before the Court."). The affidavits and matters relied upon by Silva were sufficient to raise a material issue of fact as to whether the position he held at the time of his dismissal was distinct from that of field supervisor, as enumerated in the town ordinance. *See Pollack v. Montoya,* 55 N.M. 390, 392, 234 P.2d 336, 337–38 (1951) (citing test for determining whether position is that of "public officer"); *see also Walck v. City of Albu-*

*querque,* 117 N.M. 651, 653, 875 P.2d 407, 409 (Ct.App.), *cert. denied,* 118 N.M. 695, 884 P.2d 1174 (1994); *State ex rel. Eli Lilly & Co. v. Gaertner,* 619 S.W.2d 761, 764 (Mo.Ct. App.1981) ("Whether or not a public employee is a public officer is dependent upon the legal and factual circumstances involved."). *See generally* 63A Am.Jur.2d, *supra,* § 11.

18. After reviewing the record before us, we conclude that a material, disputed factual issue exists as to whether Silva, at the time of his dismissal, was entitled to the protections accorded classified employees under the town personnel merit ordinance. Because Town Ordinance No. 272 extends the provisions contained therein to all employees, except those specifically named therein, a disputed factual question exists as to whether Silva was employed as a non-exempt employee. Thus, we hold that it was improper to determine this issue by means of summary judgment.

*APPELLANTS' SECTION 1983 AND CONSPIRACY CLAIMS*

19. Next, we examine Appellants' claims that the trial court erred in dismissing their respective claims alleging that the acts of Gutierrez, Jump, and Jones in voting not to confirm Appellants' reappointment gave rise to claims against each of the individual Appellees for conspiracy and violation of civil rights. In reviewing these contentions, we examine the legal basis for each of Appellants' claims in light of the record before us.

20. Appellants challenge the propriety of the dismissal of their claims against Gutierrez, Jump, and Jones under 42 U.S.C. Section 1983. Specifically, Appellants argue that Appellees' actions deprived them of property without due process and wrongfully deprived them of a liberty interest without due process of law. In response, the individual Appellees argue that the trial court correctly granted summary judgment on Appellants' claims filed under 42 U.S.C. Section 1983 because of Appellees' defense of qualified immunity.

21. Public officials have qualified immunity from suit under 42 U.S.C. Section 1983 as long as (1) at the time of the alleged conduct there was no clearly established stat-

utory or constitutional right that was claimed to have been violated, and (2) a reasonable person would not have known that his or her conduct was violating that clearly established right. *Oldfield v. Benavidez,* 116 N.M. 785, 790, 867 P.2d 1167, 1172 (1994); *Jennings,* 115 N.M. at 389, 851 P.2d at 511; *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). We agree with Appellees that the trial court properly applied the defense of qualified immunity to Baca's 42 U.S.C. Section 1983 claims.

22. The test for determining the applicability of qualified immunity was recently discussed by this Court in *Yount v. Millington,* 117 N.M. 95, 98, 869 P.2d 283, 286 (Ct.App.1993), *cert. denied,* 117 N.M. 121, 869 P.2d 820 (1994). The *Yount* Court upheld the trial court's dismissal of the petitioner's civil rights action brought pursuant to 42 U.S.C. Section 1983 against the New Mexico Human Services Department workers and its chief attorney. As observed in *Yount,* government officials are entitled to qualified immunity from claims filed under 42 U.S.C. Section 1983, "if, focusing on the particular facts, it was objectively reasonable for the defendant to believe that his or her acts did not violate a clearly established right." *Yount,* 117 N.M. at 102, 869 P.2d at 290.

23. Under the circumstances presented here, Baca has failed to establish a deprivation of property or liberty interests or a denial of due process by the Town or the individual Appellees. In order to show a violation of a plaintiff's property interests, such rights must be cognizable under state or federal law. *See State ex rel. Duran v. Anaya,* 102 N.M. 609, 612, 698 P.2d 882, 885 (1985). Because the trial court properly concluded that Baca was not cover by Town Ordinance No. 272, Baca has failed to state an effective claim for relief under 42 U.S.C. Section 1983. It follows that if Baca cannot show any recoverable right under 42 U.S.C. Section 1983 against Appellees, Baca cannot show a violation of a right which is clearly established and one which Appellees objectively should have been aware of. Therefore, the trial court correctly concluded that the individual Appellees had qualified immunity

from civil rights claims brought by Baca and that Baca's action under 42 U.S.C. Section 1983 against the Town was subject to dismissal.

24. Because we have found that a factual issue exists as to whether Silva was covered by the town personnel merit ordinance, we conclude that it was error to grant summary judgment dismissing Silva's 42 U.S.C. Section 1983 claims against the Town. *See Francis,* 104 N.M. at 699, 726 P.2d at 853. As observed in *Francis,* "[i]f the employer is a *public entity* acting 'under color of state law,' then the termination procedures implicate the due process guarantee of the Fourteenth Amendment, enforceable under 42 U.S.C. Section 1983...." *Id.* (emphasis added). However, determination of qualified immunity for individual defendants is a question of law, not one of fact. *Oldfield,* 116 N.M. at 789, 867 P.2d at 1171; *see also Abell v. Dewey,* 870 P.2d 363, 367–68 (Wyo.1994). Silva has not shown that his rights under the personnel merit ordinance, if he has any, were clearly established law at the time of his discharge such that any reasonable person in Appellees' position would have known of it. Our review of this issue indicates that Judge Nelson correctly applied the defense of qualified immunity to the individual Appellees. Therefore, we reverse and remand solely with respect to Silva's 42 U.S.C. Section 1983 claim against the Town, and we affirm the trial court's disposition with respect to Silva's remaining 42 U.S.C. Section 1983 claims.

25. Appellants also argue that the trial court erred in dismissing their claims against the individual Appellees for civil conspiracy. In order to establish a cause of action for civil conspiracy, a claimant must show (1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts. *Reeves v. Wimberly,* 107 N.M. 231, 235, 755 P.2d 75, 79 (Ct.App.1988); *Las Luminarias of N.M. Council of the Blind v. Isengard,* 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct.App.1978). In a civil conspiracy, the ba-

sis for relief does not arise from the fact of the conspiracy itself, but from any damages which are shown to have resulted from the acts committed pursuant to the conspiracy. *See Barber's Super Markets, Inc. v. Stryker,* 84 N.M. 181, 186, 500 P.2d 1304, 1309 (Ct. App.), *cert. denied,* 84 N.M. 180, 500 P.2d 1303 (1972); *see also Lindbeck v. Bendziunas,* 84 N.M. 21, 27, 498 P.2d 1364, 1370 (Ct.App.1972). Because Appellants have failed to establish that Appellees committed any illegal acts resulting in their termination from employment, their claims based upon civil conspiracy were properly dismissed. *See Jennings v. Hinkle,* 115 N.M. 387, 393, 851 P.2d 509, 515 (Ct.App.1993) (42 U.S.C. Section 1983 plaintiff must show direct personal involvement by defendants in violation of plaintiff's rights).

*APPELLANTS' TORT CLAIMS*

26. Lastly, Appellants challenge the propriety of the award of summary judgment dismissing their tort claims for interference with contractual relations, wrongful discharge in violation of public policy, and prima facie tort. Baca also appeals the dismissal of her claim for intentional infliction of emotional distress against Gutierrez, Jump, and Jones, individually.

27. In answer to this argument, Appellees assert that each of the tort claims brought against them are barred because the New Mexico Tort Claims Act, NMSA 1978, Sections 41–4–3(F)(1) (Cum.Supp.1985) and 41–4–4(A) (Repl.Pamp.1989), grants immunity from liability to elected officials for any tort which occurs while such officials are "acting within the scope of duty," unless immunity is otherwise specifically waived under the Act. *See M.D.R. v. State ex rel. Human Servs. Dep't,* 114 N.M. 187, 188, 836 P.2d 106, 107 (Ct.App.1992). We find this argument persuasive. Appellants have failed to show that the acts of Appellees fell within a recognized exception to the immunity

granted to public officers under the Tort Claims Act. *See Caillouette v. Hercules, Inc.,* 113 N.M. 492, 497, 827 P.2d 1306, 1311 (Ct.App.) (immunity not waived unless tort complained of falls within specifically recognized exception to Tort Claims Act), *cert. denied,* 113 N.M. 352, 826 P.2d 573 (1992).

28. Here, Appellees' acts in voting on the motion to confirm the reappointment of Appellants at the town council organizational meeting held following their election were specifically authorized under NMSA 1978, Section 3–11–5(A) (Repl.Pamp.1995); hence, such actions were clearly within the scope of their duties. *See* NMSA 1978, § 3–8–33 (Repl.Pamp.1995). Thus, Appellants' efforts to argue that such acts fell outside the purview of their official duties is not supported by the record, and the trial court properly resolved this issue as a matter of law. *See id.; see also Rivera v. New Mexico Highway & Transp. Dep't,* 115 N.M. 562, 564, 855 P.2d 136, 138 (Ct.App.), *cert. denied,* 115 N.M. 545, 854 P.2d 872 (1993). We have examined each of Appellants' other arguments and find them without merit.

*CONCLUSION*

29. The order granting Appellees' motion for summary judgment is affirmed, except as to the claim of Silva for breach of written contract and Silva's claim against the Town under 42 U.S.C. Section 1983. As to the latter claims, we remand for further proceedings consistent with this opinion.

30. **IT IS SO ORDERED.**

BOSSON and BUSTAMANTE, JJ., concur.