499 P.2d 684

James L. PECK, d/b/a James L. Peck Construction Company, Plaintiff-Appellant,

v.

Burl IVES, Defendant-Appellee.

No. 9384.

Supreme Court of New Mexico.

July 21, 1972.

McDermott, Connelly & Stevens, Santa Fe, for plaintiff-appellant.

Bigbee, Byrd, Carpenter & Crout, Paul D. Gerber, Santa Fe, for defendant-appellee.

## OPINION

STEPHENSON, Justice.

This is an appeal from a summary judgment in an action to foreclose a mechanic's lien. Appellant-contractor ("appellant") and appellee-owner ("appellee") orally agreed for appellant to construct a house for appellee. After the work was completed appellant, alleging that $19,683.65 was left unpaid under the agreement, filed suit seeking foreclosure on a mechanic's lien in that amount against the property. After appellee had answered and counterclaimed (alleging various deficiencies in the structure) and depositions had been taken, appellee filed a motion for summary judgment alleging that under the provisions of the New Mexico Construction Industries Licensing Act appellant was not duly licensed and was barred from bringing the action. The district court granted the motion and

dismissed appellant's complaint with prejudice. We reverse.

The oral agreement between the parties can best be described as being "loose." Basically, the parties agreed that appellant would build a residence which would cost the appellee the appellant's cost plus eighteen percent. No contract was ever formalized. No final set of plans was ever agreed upon. There was a set of blueprints which formed the basis of the design of the structure, but these were not closely adhered to. Instead, appellee, wishing to "play it by ear," made periodic alterations to the plans. Neither was there ever any firm price agreed upon. Appellant billed, and was paid, on a monthly basis. Appellant contends that under the agreement appellant would have been justified in ceasing work if appellee failed to make any monthly payment on time.

The parties made the oral agreement on October 9, 1969. At that time no price was agreed upon, but a cost of $40,000.00 to $45,000.00 was discussed. On November 1, 1969, appellant prepared a cost estimate of approximately $60,000.00. Appellee rejected this estimate. The ultimate cost of the house was $90,526.42. The most ever billed by appellant during any one month was $18,671.77.

The relevance of these negotiations and their accompanying figures becomes apparent in light of appellant's contractor's license, under which appellant was licensed to perform an aggregate dollar-amount of contracts, at any one time, up to $50,000.00. The basis of the summary judgment was that because the ultimate cost of the residence exceeded $50,000.00, appellant was not licensed to enter into a contract to build it and was thus barred from bringing suit.

The New Mexico Construction Industries Licensing Act ("the Act") §§ 67–35–1 through 67–35–63, N.M.S.A.1953 (Pocket Supp.1971) provides a comprehensive method for the licensing and control of contractors in order to protect the public from either irresponsible or incompetent contractors.

Several sections of the Act are of special significance to the facts of this case. For example, the Act provides that no person shall engage in the business of a contractor unless the Construction Industries Commission ("the Commission") has issued him a license which covers the type of work to be undertaken. § 67–35–15, subd. A.

The Act also provides:

"No license shall be issued by the commission to any person unless the commission is satisfied that he is or has in his employ a qualifying party, qualified for the classification for which application is made, and who has satisfied the requirements of subsection B of this section." § 67–35–17, subd. A.

And the first requirement set out under subsection B of § 67–35–17 is the one involved in this cause: "An applicant for a license shall: (1) demonstrate financial responsibility as provided in the Construction Industries Licensing Act * * *." The financial responsibility provisions of the Licensing Act are contained principally in two sections. Section 67–35–56 directs the Commission to promulgate regulations setting forth standards for determination of financial responsibility and provides that "No applicant for a contractor's license or for the renewal thereof shall be issued a license until the commission determines that he is financially responsible to perform a specified aggregate dollar-amount of contracts at any one time." § 67–35–56, subd. C. . Section 67–35–57 provides an alternative method of establishing financial responsibility through the furnishing of a bond or cash collateral.

The Act contains several sanctions for the violation of its provisions. Under one sanction the Commission may either revoke or suspend a license for various causes set out in § 67–35–26. Under another, it may enforce the provisions of the Act in district court, "by injunction, mandamus or

any proper legal proceeding." § 67–35–60. Section 67–35–59 provides that a person who violates any of the provisions of the Act is guilty of a petty misdemeanor. Finally, the most drastic sanction, and the one at issue in this appeal is provided for by § 67–35–33. It provides:

"A. No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act (67–35–1 to 67–35–63) without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

"B. Any contractor operating without a license as required by the Construction Industries Licensing Act shall have no right to file or claim any mechanic's lien as now provided by law."

The bar-to-suit provision of this statute formed the basis of the summary judgment in this action.

Appellant's attack upon the summary judgment is many-faceted. He first contends that he was always duly licensed because under the provisions of § 67–35–56 his aggregate dollar-amount of contracts at any one time never exceeded his limit of $50,000.00, since he billed his work on a monthly basis and the most any one of these bills amounted to was approximately $19,000.00.

Secondly, appellant contends that the bar-to-suit was meant to apply only to those contractors who have no license whatsoever, and that even if he did exceed his limitation he should be subject to one of the other three sanctions since he was licensed for an aggregate amount of $50,000.00. Appellant's third point is similar to his second, in that he maintains that simply because a contractor exceeds his financial limitation this does not take him out of the "duly licensed" category or constitute "operating without a license."

In his fourth point appellant urges that this court adopt the doctrine of "substantial compliance" as applied to the Licensing Act.

In his fifth point appellant contends that even if he violated the Act the contract was not void. In his last point he argues that certain provisions of the Licensing Act are unconstitutional because they act to deprive the appellant of his property without due process of law.

Appellant's first point places special emphasis on the phrase "at any one time" as it exists in § 67–35–56. He argues that when this statute is applied to the circumstances of this agreement, the aggregate dollar amount "at any one time" was that which was billed during any one month, and that since this amount never exceeded $50,000.00 he was always duly licensed. The agreement, maintains appellant, was— in practice at least—a series of unilateral contracts on a month-to-month basis.

Appellee, on the other hand, argues that appellant was not working on a monthly basis; he was hired to build an entire house and was simply paid on a monthly basis. Furthermore, contends appellee, the Licensing Act—as verified by the Commission's regulations—is concerned with total cost of any one construction project and not with the amount of progress payments.

These two positions present a variety of interesting questions relating to exactly what was agreed to and at what point either party could have abandoned the agreement without "breaching" and subjecting himself to damages. (How would such damages be computed?) What if a contractor constructed a $45,000.00 structure and then put on a $45,000.00 addition? Suppose, in this situation, the contractor reached the $50,000.00 and decided he was obligated under the Licensing Act to quit work—but the roof has not yet been built? Finally, if appellee prevails does this mean that in a loose arrangement such as this the owner can wait until the contractor exceeds the limitation and then refuse to pay?

Appellant's first contention is dependent upon a finding that this was a divisible

contract, i. e., it was a series of monthly contracts. Whether a contract can be termed "divisible" or "entire" depends upon a variety of factors, of which the method of payment is only one. See 6 Williston On Contracts §§ 860–72 (3d ed. 1962); Annot., 22 A.L.R.2d 1343. The most important one is naturally the intention of the parties. Arrow Gas Company of Dell City, Texas v. Lewis, 71 N.M. 232, 377 P.2d 655 (1962).

We are impressed with the force of appellant's argument. It is rather difficult to understand how the contract could be other than divisible. However, inasmuch as we are considering a summary judgment which could properly have been entered only in the absence of a genuine issue as to any material fact [§ 21–1–1 (56) (c) N.M.S.A.1953], we prefer to base our decision on something less ethereal than the intention of the parties, since reversal is required on other grounds in any case.

Even if appellant has violated the provisions of the Act, and thus taken himself out of the "duly licensed" category,—and we are in no way holding or even implying that he has—he has nevertheless "substantially complied" with the licensing requirements to such a degree that he is not barred from bringing suit.

The doctrine of substantial compliance developed in California, which has a licensing act similar to that of New Mexico. The culmination of this development came in the case of Latipac, Inc. v. Superior Court of Marin County, 64 Cal.2d 278, 49 Cal.Rptr. 676, 411 P.2d 564 (1966), in which the California Supreme Court outlined what it considered to be the elements of the doctrine as it existed in that state. Those elements are:

"* * * (1) the fact that plaintiff [contractor] held a valid license at the time of contracting, (2) that plaintiff readily secured a renewal of that license and (3) that the responsibility and competence of plaintiff's managing officer

were officially confirmed throughout the period of performance of the contract."

The California court did not hold that all of these elements necessarily had to exist in any one fact situation in order for the doctrine to apply. In Latipac, they were all present. We shall now consider these elements in the context of the present case.

(1) Appellant held a valid license at the time of contracting. This is a crucial element of the doctrine, as pointed out in Latipac. Appellee contends that appellant did not have a valid license at the inception of the contract. We do not agree. At that time there was no definite price. When the parties agreed to begin construction on the cost plus percentage basis with monthly billings, appellant held a valid license.

(2) Appellant readily secured a renewal of his license. As stated in Latipac, supra:

"Just as plaintiff's possession of a valid contractor's license at the time of contracting attests to its competence and responsibility at the inception of the contract, so the renewal of its license after completion of performance lends confirmation to plaintiff's continuing competence and responsibility during the period of performance. Nothing in the record suggests that plaintiff's fitness to enjoy a license was subject to variation in the interval between the expiration and renewal of its license."

In Latipac, the renewal came two months after the work was completed. Here, appellant completed construction of appellee's house and about seven months later, renewed his license so that he was "financially responsible" up to $100,000.00 and over. We believe this to come within the provisions of this requirement under the circumstances of this case.

(3) The responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract.

It is doubtful that this last element is necessary in this case. The context in which this requirement arose in Latipac, supra, involved a license which had expired. Thus the court was concerned with whether the corporation employed an individual during the period of expiration who was responsible and competent enough to qualify for a license. That is not a problem here since appellant's license never expired.

Most important are the reasons for the doctrine of substantial compliance. The purpose of the Act is to protect the public from incompetent and irresponsible builders. This purpose should not be lost sight of. In view of the severity of the sanctions and the forfeitures which could be involved, we are reluctant to construe the statute more broadly than necessary for the achievement of its purpose. The statute should not be transformed into an "unwarranted shield for the avoidance of a just obligation."

Appellee maintains that New Mexico has implicitly rejected the doctrine of substantial compliance by refusing to apply it in several situations when the doctrine could have been implemented. He bases this contention upon this court's decisions in Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965), Nickels v. Walker, 74 N.M. 545, 395 P.2d 679 (1964) and Crawford v. Holcomb, 57 N.M. 691, 262 P.2d 782 (1953), overruled on other grounds, State ex rel. Gary v. Fireman's Fund Indemnity Company, 67 N.M. 360, 355 P.2d 291 (1960).

We do not agree. In none of those cases was the doctrine applicable, since the contractor was not licensed at the time of the contract.

The summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

McMANUS and OMAN, JJ., concur.