2002-NMCA-087

51 P.3d 533

**BC & L PAVEMENT SERVICES, INC. a foreign corporation, Plaintiff–Petitioner,**

v.

**Louis T. HIGGINS, State Purchasing Agent for the State of New Mexico, Defendant–Respondent,**

and

**Dismuke Construction Company, a New Mexico corporation, Interested Party–Respondent.**

No. 22,046.

Court of Appeals of New Mexico.

June 25, 2002.

Douglas Seegmiller, Douglas Seegmiller Law Offices, Albuquerque, NM, for Petitioner.

Walter G. Lombardi, Legal Bureau Risk Management Division, Santa Fe, NM, for Respondent.

David P. Gorman, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, NM, for Interested Party–Respondent.

## OPINION

WECHSLER, Judge.

{1} BC & L Pavement Services, Inc. (BC & L) appealed the decision of Louis Higgins, State Purchasing Agent (Higgins), to affirm the decision of the State Purchasing Office. The State Purchasing Office rejected BC & L's bid to provide materials and labor for certain treatments to paved surfaces at air-

ports and accepted the bid of Interested Party–Respondent Dismuke Construction Company (Dismuke). BC & L was not licensed at the time of the bid, but obtained a license before the time of contact. Higgins denied BC & L's protest, and the district court affirmed the denial. We granted BC & L's petition for a writ of certiorari. We discuss whether the doctrine of substantial compliance applies to the requirement that bidders on construction contracts be licensed at the time of bidding, whether the State Purchasing Office violated the requirement that bids be rejected only on the basis of factors set out in the invitation for bids, and whether BC & L is entitled to relief because Higgins did not follow proper procedures. We affirm the district court.

*Standard of Review*

■ {2} When reviewing the decision of the district court through a writ of certiorari, this Court employs a limited standard of review. *C.F.T. Dev., LLC v. Bd. of County Comm'rs,* 2001–NMCA–069, ¶¶ 6–14, 130 N.M. 775, 32 P.3d 784. A writ of certiorari may be issued only on the basis of one of the following four grounds:

(a) a conflict between the district court order and a prior appellate opinion of either this Court or the Supreme Court; (b) a conflict between the district court order and any statutory provision, ordinance or agency regulation; (c) a significant question of law under the New Mexico or United States Constitutions; or (d) an issue of substantial public interest that should be determined by this Court.

*Id.* ¶ 8. BC & L asserts that each of its issues involves a conflict between the decisions of the district court on the one hand and appellate decisions and statutes or regulations on the other. **(BIC ii)** This case thus presents issues of law which we review de novo. *Sitterly v. Matthews,* 2000–NMCA–037, ¶ 22, 129 N.M. 134, 2 P.3d 871 (discussing standard of review).

■ {3} We do not decide whether there was substantial evidence to support the agency's decision or whether the agency abused its discretion. *C.F.T. Dev., LLC,* 2001–

NMCA–069, ¶¶ 9–10, 130 N.M. 775, 32 P.3d 784. Those decisions are left to the district court in its appellate capacity. *Id.*

*Facts*

{4} BC & L, a Texas corporation, bid on an invitation for bids on a "price agreement" issued by the Purchasing Division of the General Services Department to furnish and apply sealer to asphalt pavement. Under a "price agreement" the successful bidder agrees to furnish goods or services at a specified price for a defined period of time "to a state agency or a local public body which issues a purchase order." NMSA 1978, § 13–1–71 (1984). The invitation for bids specifically left open the quantity of goods to be purchased. *See* NMSA 1978, § 13–1–63 (1984) (defining indefinite quantity contract). Invoices were to be sent to the Aviation Division of the New Mexico State Highway and Transportation Department (the Department). Delivery was to be to the Department at "various airports as requested at time of order."

{5} The invitation for bids did not specify whether a bidder was required to be a licensed contractor in New Mexico at the time of bidding. The parties dispute whether such licensure was required.

{6} It is not clear when BC & L submitted its bid, but it certainly did so before April 20, 2000, when bids were opened. BC & L was formally issued its New Mexico contractor's license on May 17, 2000.

{7} BC & L was the lowest bidder. Higgins rejected BC & L's bid because BC & L was not a licensed New Mexico contractor at the time bids were opened on April 20, 2000. Higgins signed a price agreement with Dismuke on May 2, 2000.

{8} BC & L learned of the award to Dismuke by an oral communication with Higgins' office on May 9, 2000. It filed a protest on May 24th on the grounds that the price agreement included work on federally funded projects to which the requirement to be licensed at the time of bidding did not apply. On June 2nd, it sent another letter adding "a few legal points [which] might clarify the grounds for protest, stated in our earlier letter." In its June 2nd letter, it contended that Higgins could not add a requirement, namely licensure, which had not been set out in the invitation for bids, and that in any case, BC & L had substantially complied with the licensing requirement. It did not request a hearing or submit further information.

{9} On June 6th, Higgins issued a letter decision rejecting the contention in BC & L's May 24th protest on the grounds that the invitation for bids concerned only state and locally funded airport projects for which bidders were required to be licensed. Higgins ruled that BC & L's June 2nd letter did not merely clarify issues raised in the May 24th letter, but raised new issues which were not timely filed pursuant to NMSA 1978, § 13–1–172 (1987) (providing that protest be submitted "within fifteen calendar days after knowledge of the facts or occurrences giving rise to the protest"). However, Higgins ruled on the merits of the issues BC & L raised in its June 2nd letter, determining that the statutory requirement of licensing was included in the invitation for bids as a matter of law. He also ruled that even if BC & L could be said to have substantially complied with the timing component of the licensure requirement, it had obtained the wrong type of license.

{10} BC & L appealed to the district court, raising the issues it had raised in its May 24th and June 2nd letters and adding the arguments that Higgins failed to follow proper procedures and violated due process of law by failing to mention until June 6th the contention that BC & L had failed to obtain the proper license. *See* NMSA 1978, § 13–1–183 (1999) (providing that procurement code decisions shall be appealed pursuant to NMSA 1978, § 39–3–1.1 (1999)); § 39–3–1.1 (providing for appeal of certain agency decisions to district court). The district court affirmed Higgins, ruling that BC & L violated the statutory requirement that it be licensed at the time of bidding, that the licensing requirement did not need to be stated in the invitation for bids, and that the doctrine of substantial compliance did not apply. It did not reach BC & L's procedural issues.

*Substantial Compliance with Licensing Requirement*

{11} BC & L contends that the district court erred in failing to apply the doctrine of substantial compliance. This doctrine was adopted by *Peck v. Ives,* 84 N.M. 62, 65–66, 499 P.2d 684, 687–88 (1972), "to determine whether an unlicenced contractor has complied with the licensing requirements to the degree necessary to avoid bar from bringing suit." *Koehler v. Donnelly,* 114 N.M. 363, 365, 838 P.2d 980, 982 (1992). An unlicenced contractor may not file an action to recover for work performed. NMSA 1978, § 60–13–30 (1977).

{12} The factors to be considered in applying the doctrine to avoid the bar to pursuing litigation include whether "(1) the contractor held a valid license at the time of contracting; (2) the contractor readily secured a renewal of that license; and (3) the responsibility and competence of the contractor's managing officer ... throughout the period of performance." *Koehler,* 114 N.M. at 365, 838 P.2d at 982. All three need not be established; the crucial question is whether "the party seeking to escape his obligation has received the full protection contemplated by the statute." *Id.*

{13} In *Peck,* our Supreme Court held that the contractor substantially complied with the licensing requirements to bring a lawsuit when the parties did not agree on a definite price, but agreed to monthly billings on a cost plus percentage basis, even though the completed cost of the project exceeded the contractor's licensed financial limits at the time of contracting. *Peck,* 84 N.M. at 65, 499 P.2d at 687. It also applied the doctrine in *Koehler,* in which the contractor did not willfully violate the licensing statutes because he was unaware that his license had been cancelled for reasons beyond his control at the time of contracting. *Koehler,* 114 N.M. at 365–66, 838 P.2d at 982–83. In contrast, the Supreme Court held that the contractor did not substantially comply with the statute and could not file an action for payment in *Roth v. Thompson,* 113 N.M. 331, 335, 825 P.2d 1241, 1245 (1992), when the contractor was not licensed at the time of contracting even though he applied for a license while the project was ongoing.

{14} *Peck* and *Koehler* address only substantial compliance to avoid the bar on a contractor from instituting a lawsuit for work performed. The question of whether the doctrine of substantial compliance applies to the statutory requirement that bidders possess a license at the time they make their bids is one of first impression in New Mexico. NMSA 1978, § 60–13–12(B) (1989) provides: "No bid on a contract shall be submitted unless the contractor has a valid license issued by the [construction industries] division to bid and perform the type of work to be undertaken." Section 60–13–12(C) exempts highway projects involving federal funds from the requirements of Subsection B. We discuss below whether Subsection C's exemption to the licensing requirement is applicable. First, we focus on whether BC & L substantially complied with Subsection B.

{15} In construing statutes, our primary concern is to fulfill the legislature's intent. *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. We consider relevant statutes as a whole. *See id.* ("We will construe the entire statute as a whole so that all the provisions will be considered in relation to one another."). We give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous. *Sims v. Sims,* 1996–NMSC–078, ¶ 17, 122 N.M. 618, 930 P.2d 153.

{16} In this appeal, we are concerned with two legislative acts, the Construction Industries Licensing Act, NMSA 1978, §§ 60–13–1 to 60–13–59 (1967, as amended through 2001) (Licensing Act), and the Procurement Code, NMSA 1978, §§ 13–1–28 to 13–1–199 (1984, as amended through 2001). The purpose of the Licensing Act is to efficiently protect the public from incompetent or fiscally irresponsible contractors.

The purpose of the Construction Industries Licensing Act [this article] is to promote the general welfare of the people of New Mexico by providing for the protection of life and property by adopting and enforcing codes and standards for con-

struction, alteration, installation, connection, demolition and repair work. To effect this purpose, it is the intent of the legislature that:

A. examination, licensing and certification of the occupations and trades within the jurisdiction of the Construction Industries Licensing Act be such as to ensure or encourage the highest quality of performance and to require compliance with approved codes and standards and be, to the maximum extent possible, uniform in application, procedure and enforcement;

B. there be eliminated the wasteful and inefficient administrative practices of dual licensing, duplication of inspection, nonuniform classification and examination of closely related trades or occupational activities and jurisdictional conflicts; and

C. contractors be required to furnish and maintain evidence of responsibility.

NMSA 1978, § 60–13–1.1(A)–(C) (1989); see Mascarenas v. Jaramillo, 111 N.M. 410, 413, 806 P.2d 59, 62 (1991). "The purposes of the Procurement Code are to provide for the fair and equitable treatment of all persons involved in public procurement, to maximize the purchasing value of public funds and to provide safeguards for maintaining a procurement system of quality and integrity." NMSA 1978, § 13–1–29(C) (1984). Protecting the public interest is the most important goal of the Procurement Code. Planning & Design Solutions v. City of Santa Fe, 118 N.M. 707, 710, 885 P.2d 628, 631 (1994).

{17} Construing the above statutes together, we conclude for the context of this case that the legislature intended (1) that public contracts should be awarded only to licensed contractors and (2) that purchasing authorities be relieved from the necessity of making an independent investigation into the qualifications and fiscal responsibility of a contractor who was not licensed at the time of bidding. See id. at 710, 885 P.2d at 631 ("An economical and efficient system of procurement directly benefits taxpayers."). With this legislative intent, the doctrine of substantial compliance does not apply to the requirement of Section 60–13–12(B) that a contractor have a valid license when submitting a bid on a public contract.

{18} BC & L protests that it was competent and fiscally responsible at the time of bidding, pointing to the fact that it was issued a license less than a month after bids were opened. The test, however, from the plain language of the statute, is not whether Higgins should somehow have known that BC & L was competent and fiscally responsible at the time of bidding, but whether BC & L was actually licensed at the time of bidding. Section 60–13–12(B).

{19} BC & L argues that it substantially complied with the statute because it was licensed before the State issued a purchase order to form a completed contract. It relies on Peck, 84 N.M. at 65, 499 P.2d at 687, and Koehler, 114 N.M. at 365, 838 P.2d at 982, for the principle that it only had to be licensed at the time of contracting. However, the problem with BC & L's argument is that it is not in the same position as a bidder as were the bidders in Peck and Koehler—unlicensed contractors who were not incompetent and not irresponsible in circumstances in which enforcement of strict compliance would enable the party who owed them for their services to use the statute as an "unwarranted shield for the avoidance of a just obligation." Peck, 84 N.M. at 66, 499 P.2d at 688; Koehler, 114 N.M. at 365–66, 838 P.2d at 982–83.

{20} BC & L further argues that Higgins's decision works a forfeiture upon it and would be unfair. We do not agree. The doctrine of substantial compliance prevents a forfeiture on the part of a contractor who has performed work on a project as long as the party for whom the work is performed has received all the protections due it under the licensing statute. See Koehler, 114 N.M. at 365, 838 P.2d at 982. BC & L has not performed work, but only incurred the expense necessary to prepare a bid. Like all bidders, it knew or should have known that its bid might not be accepted and that the cost of preparing what may turn out to be an unaccepted bid is part of the cost of doing business. Instead, it now argues the acceptance of its bid was so certain that rejection of it is a "forfeiture." This position ignores the plain terms of Section 60–13–12(B) and overlooks the considerable discretion given to

purchasing authorities to decide who is a responsible bidder, *see State ex rel. KNC, Inc. v. N.M. Dep't of Fin. & Admin.,* 103 N.M. 167, 172, 704 P.2d 79, 84 (Ct.App.1985), or even to reject all bids and start over. *See* § 13–1–131.

{21} Finally, BC & L argues that the district court's decision is contrary to the purpose of the Procurement Code, which is to "maximize the purchasing value of public funds," citing Section 13–1–29(C). Maximizing the purchasing value of public funds is one of the purposes of the Procurement Code set out in Section 13–1–29(C). However, the legislature itself decided to put restrictions on maximizing the purchasing value of public funds while enhancing the efficiency of the procurement process and promoting quality and integrity by requiring that bidders be licensed at the time of bidding. We will not second-guess the legislature's policy decision. *See Madrid v. St. Joseph Hosp.,* 1996–NMSC–064, ¶ 10, 122 N.M. 524, 928 P.2d 250 (explaining that unless a statute violates the constitution, "[w]e will not question the wisdom, policy, or justness of legislation enacted by our [l]egislature").

{22} We note that this case is not like *Planning & Design Solutions,* 118 N.M. at 714–16, 885 P.2d at 635–37, in which our Supreme Court required a public owner to repay a rejected bidder the cost of preparing its bid. In that case, the public owner had capriciously violated the Procurement Code. Such repayment is unwarranted in this case in which BC & L, the bidder rather than the public owner, violated the Procurement Code.

{23} To buttress his conclusion that BC & L did not substantially comply with the licensure requirement, Higgins also determined that BC & L did not have the correct type of license. BC & L disagrees. We need not reach this issue because it is undisputed that BC & L did not have any license at the time of bidding.

{24} The doctrine of substantial compliance with Section 60–13–30 as set forth in *Peck* and *Koehler* does not apply to the requirement that a party be licensed to bid in accordance with Section 60–13–12(B).

*Licensing Requirement as Part of Invitation for Bids*

{25} BC & L contends that the requirement to hold a valid license in order to bid should not be enforced in this case because it was not stated in the invitation for bids. It relies on the following statutory language:

> Bids shall be evaluated based on the requirements set forth in the invitation for bids, which requirements may include criteria to determine acceptability such as inspection, testing, quality, workmanship, delivery and suitability for a particular purpose. Those criteria such as discounts, transportation costs and total or life-cycle costs that will affect the bid price shall be objectively measurable, which shall be defined by regulation. The invitation for bids shall set forth the evaluation criteria to be used. No criteria may be used in bid evaluation that are not set forth in the invitation for bids.

Section 13–1–105. It further relies on *Planning & Design Solutions,* 118 N.M. at 712, 885 P.2d at 633 (holding city violated Procurement Code by improperly adding to evaluation criteria after receiving bids the factor that local firms would be favored).

{26} However, the statutory requirement that bidders be licensed is not simply another criterion which an owner may or may not choose to include in an invitation for bids. A public body does not have the choice to selectively veto Section 60–13–12(B), and we have been directed to nothing in either the Procurement Code, including Section 13–1–105, or the Licensing Act giving public owners a choice about whether bidders must be licensed. Rather, the licensing requirement is incorporated into invitations for bids as a matter of law. *Cf. Schmick v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 216, 218, 704 P.2d 1092, 1094 (1985) ("Thus, the [uninsured motorist] statute will be read into the [insurance] policies and, to the extent that the policy provisions conflict with the statute, the statute prevails.").

{27} BC & L argues alternatively that the licensing requirement was not stated because the licensing requirement did

not apply under Section 60–13–12(C), which provides that "[a]ny contractor may bid on a New Mexico highway project involving the expenditure of federal funds prior to making application to the division for a license." It argues that the invitation for bids was sufficiently generic to include highway projects involving the expenditure of federal funds. It contends, but does not cite evidence in support, that airport projects without federal funding "are scarcer than hen's teeth." We do not consider this last contention. "Argument of counsel is not evidence." *State v. Cochran,* 112 N.M. 190, 192, 812 P.2d 1338, 1340 (Ct.App.1991).

{28} The record reveals that the invitation for bids stated "that these documents apply to airport improvement projects that involve state and/or local community funding only." The invitation contained a conditional provision that if federal funds became available, the acceptable low bidder would have to undertake additional work to qualify to be the provider on such projects, stating "[w]hen Federal Aviation Administration (FAA), funds are involved, there could be additional administrative requirements of the contractor." The invitation for bids provided further information about the "additional requirements." It then concluded, "[s]hould acceptable low bidders indicate they are not interested in being considered for FAA funded projects by refusing to fill out the above discussed forms, separate awards could be made to contractors who are interested in projects which include FAA funding." There were requirements that invoices be sent to the Aviation Division with delivery to the Department at "various airports as requested at time of order." The work consisted of applying "coal-tar sealer/rejuvenator to bituminous surfaces (airport runways)." There is no indication in the record that any federal funds actually were used for the project.

{29} Higgins determined that the contract was for airport surfaces and was not a generic contract for highways as well as airports and held that Section 60–13–12(C) did not apply. The district court agreed. Neither Higgins nor the district court indicated that the invitation for bids was ambiguous.

{30} The ambiguity of the invitation for bids is a question of law. *See Kirkpatrick v. Introspect Healthcare Corp.,* 114 N.M. 706, 711, 845 P.2d 800, 805 (1992) ("Whether or not a contract is ambiguous is a question of law for the court."). The resolution of the ambiguity is generally a question of fact. *Young v. Thomas,* 93 N.M. 677, 679, 604 P.2d 370, 372 (1979) ("But once this determination [of ambiguity] has been made, the construction of the agreement depends on extrinsic facts and circumstances, and then the terms of the agreement become questions of fact.").

{31} Either way, whether the district court determined the invitation for bids referred only to state and locally funded projects as a matter of law or whether it resolved an ambiguity as a question of fact, its resolution of this issue does not fall within our normal scope of appellate review on certiorari. We do not review questions of fact. *C.F.T. Dev., LLC,* 2001–NMCA–069, ¶¶ 9–10, 130 N.M. 775, 32 P.3d 784. The issue of whether this particular invitation for bids involved generic highway projects as a matter of law does not present a conflict between the district court's decision and case law, statutes, regulations, or constitutions. *See id.* ¶ 8. Nor is it a matter of substantial public interest; it concerns the wording of one invitation for bids. *Id.* Therefore, under our standard of review, whether the decision below was factual or legal, we do not reach the merits. We affirm the district court's determination that the invitation related to state and locally funded airport projects only.

{32} Moreover, even if we were to reach the merits, we believe that the invitation for bids unambiguously concerns only airport projects not involving federal funding. It specifically so states, and the particulars of the invitation set out above support its plain wording. Section 60–13–12(C) does not apply.

{33} BC & L further relies on decisions of the Comptroller General of the United States in procurement cases, which treat licensing as a contract performance problem to be resolved after the contract is awarded. Indeed, Higgins concedes that current Federal Highway Administration regulations prohibit

requiring a contractor to obtain a license "before submission of a bid or before the bid may be considered for ... contract." Higgins contends, and BC & L does not dispute, that the federal government does not license contractors. Decisions from a jurisdiction lacking a statute similar to Section 60–13–12 are not relevant.

{34} The licensing requirement did not have to be explicitly included in the invitation for bids.

*Procedural Issues*

■ {35} BC & L also raises procedural issues. It maintains the district court wrongly dismissed its alternative claim for a writ of mandamus or injunction, and denied it any relief, because Higgins "did not provide either notice or a hearing of his reasons for rejecting [BC & L's] bid, as required by State Purchasing Regulations, [1.4.1.71(B) NMAC (2001) and 1.4.1.79 NMAC (1998)] and by ... *Board of Education v. Harrell,* 118 N.M. 470, 478, 882 P.2d 511, 519 (1994)." Its argument encompasses both due process and Procurement Code issues.

■ {36} To prevail on a due process claim, BC & L "must prove that it had a definite liberty or property interest and that such interest was, under color of state law, abridged without appropriate process." *Curtis Ambulance of Fla., Inc. v. Bd. of County Comm'rs,* 811 F.2d 1371, 1375 (10th Cir. 1987). The majority of federal courts have held that a disappointed bidder who is not awarded a state contract does not possess a constitutionally protected property interest. *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.,* 933 F.2d 853, 857 (10th Cir.1991). A distinct minority has recognized a limited property interest in unsuccessful bidders who met all substantive standards and took all appropriate procedural steps to have their "claim of entitlement to the benefit decided, not arbitrarily, but in accordance with state law." *Hixon v. Durbin,* 560 F.Supp. 654, 661 (E.D.Pa.1983). *See generally Curtis,* 811 F.2d at 1376 and cases cited therein (summarizing both majority and minority views). We need not decide which line of cases New Mexico would follow. BC & L did not meet all substantive and proce-

dural requirements because it was not licensed at the time of bidding. Under either the majority or the minority view, it did not have a property interest protected by the due process clause. Its due process arguments must therefore fail.

■ {37} However, BC & L had the right to procedures established by the regulations under the Procurement Code for all bidders and an implied contract with the State Purchasing Office that all bidders would be treated fairly. *See Planning & Design Solutions,* 118 N.M. at 714–15, 885 P.2d at 635–36 (holding that city had implied contract with bidder to treat bidder fairly). The regulations clearly provide that a written copy of the determination rejecting a bid shall be sent to the nonresponsive bidder:

> 1.4.1.71 NMAC REJECTION OF INDIVIDUAL BIDS OR PROPOSALS:
>
> . . . .
>
> B. Written determination required. A written determination which contains the reasons for the rejection of an individual bid or proposal shall be prepared by the [S]tate [P]urchasing [A]gent or central purchasing office and made a part of the procurement file. In the case of procurements for information system resources, a written determination which contains the reasons for the rejection of an individual proposal shall be prepared by the procurement manager and shall be included as an attachment to the evaluation committee report as a part of the procurement file. Further, a copy of the determination shall also be sent to the nonresponsive offeror.
>
> . . . .
>
> 1.4.1.79 NMAC DETERMINATION REQUIRED
>
> A. If a bidder or offeror who otherwise would have been awarded a contract is found to be non-responsible, a written determination, setting forth the basis of the finding, shall be prepared by the State Purchasing Agent or central purchasing office. The written determination shall be made part of the procurement file, and a

copy of the determination shall be sent to the non-responsible bidder or offeror. 1.4.1.71 NMAC and 1.4.1.79 NMAC.

▬ {38} Higgins admits BC & L did not receive written notification, but asserts this error was harmless because BC & L did receive oral notification and filed a timely protest. While not condoning the failure of the Purchasing Agent's Office to follow its own regulations in sending written notice, we do not believe BC & L suffered any prejudice. As a consequence, there is no reversible error. *See Tartaglia v. Hodges*, 2000–NMCA–080, ¶ 33, 129 N.M. 497, 10 P.3d 176 (stating that in the absence of prejudice, there is no reversible error). BC & L asserts that Higgins also failed to comply with the regulation concerning inquiry by the procurement officer:

A. Before awarding a contract, the procurement officer or procurement manager must be satisfied that the bidder or offeror is responsible. Therefore, a bidder or offeror shall supply information and data requested by the procurement officer concerning the responsibility of the bidder or offeror. The unreasonable failure of a bidder or offeror to promptly supply information or data in connection with such an inquiry is grounds for a determination that the bidder or offeror is not responsible.

1.4.1.78 NMAC (1998). BC & L contends inquiry concerning a bidder's responsibility is mandatory on the part of the officer. We do not agree. Responding to such an inquiry is mandatory on the part of the would-be successful bidder, but the inquiry on the part of the procurement officer is optional.

▬ {39} BC & L also contends it did not have the opportunity to counter Higgins's decision that it had the wrong category of license. BC & L argues that due process entitled it to a hearing, but, in effect, it did not have an administrative remedy. This claim is without foundation. As we have pointed out earlier in this opinion, BC & L did not have any license whatsoever. In addition, BC & L does not call our attention to anything in the regulations which would have prevented it from requesting a hearing, submitting more documents for the administrative record, or moving for reconsideration of Higgins's decision. It is true that BC & L was not automatically entitled to a hearing under the regulations:

A. Hearings will be held only when the State Purchasing Agent or central purchasing office determines that substantial material factual issues are present that cannot be resolved satisfactorily through an examination of written documents in the record. Any party may request a hearing, but such requests shall be deemed denied unless specifically granted.

1.4.1.86 NMAC (1998). However, this regulation allows state officials to hold a hearing when one is necessary. Therefore, we agree with Higgins that BC & L, having failed to request a hearing, may not now complain of being deprived of one. *See State Racing Comm'n v. McManus*, 82 N.M. 108, 111–12, 476 P.2d 767, 770–71 (1970) (holding that jockey who failed to exercise his administrative remedy of requesting hearing before racing commission could not complain to courts of receiving no hearing).

{40} Procedural irregularities do not require reversal of the district court.

*Conclusion*

{41} We affirm the decision of the district court.

{42} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.