# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>September 9, 2016</u>

**NO. 34,285**

**IN THE MATTER OF THE PETITION
FOR A HEARING ON THE MERITS
REGARDING AIR QUALITY
PERMIT NO. 3135**

**MARGARET M. FREED, MARY ANN ROBERTS,
and PAT TOLEDO,**

Petitioners-Appellants,

v.

**THE CITY of ALBUQUERQUE and
SMITH'S FOOD & DRUG CENTERS, INC.,**

Respondents-Appellees.

**APPEAL FROM THE ALBUQUERQUE-BERNALILLO COUNTY AIR
QUALITY CONTROL BOARD
Felicia L. Orth, Hearing Officer**

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Albuquerque, NM

for Appellants

City of Albuquerque City Attorney's Office
Jessica M. Hernandez, City Attorney
Carol M. Parker, Assistant City Attorney
Albuquerque, NM

for Appellee City of Albuquerque

Sutin, Thayer & Browne, P.C.
Frank C. Salazar
Albuquerque, NM

for Appellee Smith's Food & Drug Centers, Inc.

**OPINION**

**HANISEE, Judge.**

{1}    In this appeal, we consider whether the Albuquerque-Bernalillo County Air Quality Control Board (the Board) gave sufficient notice of its hearing on motions to summarily resolve a challenge to a permit issued by the City of Albuquerque Environmental Health Department (the Department), as required by Section 74-2-7(I) of the Air Quality Control Act (the AQCA), NMSA 1978, §§ 74-2-1 to -17 (1967, as amended through 2009) and its own regulations. Concluding that it did not, we vacate the Board's decision and remand for further proceedings.

**BACKGROUND**

{2}    In November 2013 Respondent Smith's Food & Drug Centers, Inc. (Smith's) submitted an application to the Department seeking a permit to construct a gas station with authorization to pump up to 7,000,000 gallons of gasoline per year. After holding a public hearing on the application, the Department granted Smith's application and issued the requested permit.

{3}    Petitioners Margaret Freed, Mary Ann Roberts, and Pat Toledo (collectively Petitioners) filed a written petition challenging the permit with the Board. Petitioners contended that the Department had failed to take into account various "quality-of-life concerns raised by [hearing] participants" and that the Department's decision to grant

the permit application would cause "emissions, odors, fumes, increased traffic[,] and other negative impacts on [Petitioners'] property."

{4}     The Board appointed a hearing officer, who entered a "prehearing order" scheduling a public hearing on the petition for September 10, 2014.[1] The prehearing order required the parties to engage in "limited written discovery" and "early filing of technical testimony in full narrative" in order to "obviate the need for depositions."[2] The prehearing order required Petitioners or any other interested participants to file a "notice of intent to present technical testimony" prior to the hearing which summarized the technical testimony that Petitioners would offer at the hearing. The Board published a notice stating that "public comment of a non-technical nature" would be heard at the September 10, 2014, hearing, and that any member of the public who sought to present technical evidence would be required to file a notice of intent before August 8, 2014. The notice also stated that "[u]pon conclusion of the evidentiary hearing, the hearing officer will announce the post hearing process. At a later date, the Board will deliberate and decide whether the

[1]See Section 74-2-7(J) (stating that "[t]he environmental improvement board or the local board may designate a hearing officer to take evidence in the hearing").

[2]The prehearing order defines "[t]echnical evidence or testimony" as "scientific, engineering, economic or other specialized evidence or testimony. It does not mean legal argument, general comments or statements of policy." This definition paraphrases the definition of "[t]echnical evidence" set out in Board regulations. *See* 20.11.81.7(T) NMAC.

permit appeal will be granted . . . or be denied."

{5}     On August 26, 2014, the hearing officer amended the prehearing order. The hearing officer's order rescheduled the hearing on Petitioners' appeal of the Department's permit decision for November 5, 2014, and stated that "[i]n the event dispositive motions are timely filed, the Board will hear them on October 8, 2014, as part of the Board meeting beginning at 5:30 p.m." The Board published an amended notice in the *Albuquerque Journal* that reflected the new date that the hearing would take place. The notice stated that "public comment of a non-technical nature" would be heard at the rescheduled hearing on November 5, 2014. The amended notice further stated that "[i]n the event pre-hearing motions are timely filed, the Board will conduct a motion hearing on October 8, [2014], as part of a Board meeting that will begin at 5:30 p.m."

{6}     Respondents each filed a motion for summary judgment, contending that the Board was required to uphold the Department's issuance of the permit because neither the AQCA nor any regulations the Board had promulgated in accordance therewith permitted the modification or denial of a construction permit based on Petitioners' health concerns and the putative opinion of the expert witness they intended to call at the Board's hearing on the petition. After hearing argument from the parties on the motions at its regularly-scheduled hearing on October 8, 2014, the

Board granted summary judgment to Respondents by a vote of six to one and vacated the hearing on the petition scheduled for November 5, 2014. Petitioners appeal.

**STANDARD OF REVIEW**

{7}     We have statutory jurisdiction to review an appeal taken by "[a]ny person adversely affected by an administrative action" by the Board. Section 74-2-9(A). We may set aside the Board's action if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." Section 74-2-9(C).

**DISCUSSION**

{8}     We begin our discussion by sketching relevant provisions of the AQCA governing appeals of the Department's permitting decisions. We then address Petitioners' argument that the Board's decision in this case violated the AQCA.

{9}     The Environmental Improvement Board has statewide jurisdiction to administer and enforce the AQCA except where, as here, a qualifying county or municipality has "adopt[ed] an ordinance providing for the local administration and enforcement of the [AQCA]." Section 74-2-4(A); *see also* § 74-2-3(B) (providing that "the jurisdiction of the environmental improvement board extends to all areas of the state except within the boundaries of a local authority"). Where a county or municipality has assumed jurisdiction, it is required to establish local equivalents of the statewide

agencies that would otherwise administer and enforce the AQCA: "(1) . . . a local board to perform, within the boundaries of the local authority, those functions delegated to the environmental improvement board"; and "(2) . . . a local agency [(in this case the Department)] to administer and enforce the provisions of the AQCA within the boundaries of the local authority that shall . . . perform all of the duties required of the [State Environment D]epartment[.]" Section 74-2-4(A)(1), (2). *See* Bernalillo County, N.M., Ordinance Ch. 30, art. II, §§ 30-32, 30-34 (1994) (establishing the Board and the Department).

{10}     Under the AQCA, any person who seeks to construct a "source" of air contaminants must obtain a construction permit from the Department. *See* § 74-2-7(A)(1); *see also* § 74-2-2(T) (defining "source" as "a structure, building, equipment, facility, installation or operation that emits or may emit an air contaminant"). The AQCA sets out minimal requirements for the Board's regulations governing permit applications, *see* § 74-2-7(B), as well as the grounds that the Department may use to deny an application, *see* § 74-2-7(C), and permissible conditions that the Department may attach to a permit approval under Section 74-2-7(D).

{11}     The AQCA also allows any person who is "adversely affected" by the Department's permitting decision to petition the Board for review. Section 74-2-7(H). Once a petition challenging a permit decision is filed,

5

the environmental improvement board or the local board shall hold a hearing within sixty days after receipt of the petition. [The B]oard shall notify the petitioner and the applicant or permittee, if other than the petitioner, by certified mail of the date, time and place of the hearing. If the subject of the petition is a permitting action deemed by the environmental improvement board or the local board to substantially affect the public interest, [The B]oard shall ensure that the public receives notice of the date, time and place of the hearing. The public in such circumstances shall also be given a reasonable opportunity to submit data, views or arguments orally or in writing and to examine witnesses testifying at the hearing. Any person submitting data, views or arguments orally or in writing shall be subject to examination at the hearing.

Section 74-2-7(I). The AQCA assigns the burden of proof to the petitioner, and "[b]ased upon the evidence presented at the hearing, . . . [the B]oard shall sustain, modify or reverse the action of the [D]epartment[.]" Section 74-2-7(K).

{12}     Petitioners argue that Section 74-2-7(I) provides that whenever the Department's permitting decision is challenged by the filing of a "timely petition," the Board "shall hold a hearing." *Id.* According to Petitioners, Section 74-2-7(I)'s use of the mandatory "shall[,]" combined with Section 74-2-7(I) through (K)'s detailed requirements that the Board give the public notice of the hearing and an opportunity to present evidence, and its requirement that the Board's decision be "[b]ased upon the evidence presented at the hearing" combine to obligate the Department to resolve appeals from permitting decisions only after a public hearing has taken place. Section 74-2-7(K). Having failed to hold such a hearing in this case, Petitioners contend that

6

we must vacate the Board's decision.

{13}     Although this argument seems straightforward on its face, it consists of two distinct propositions. First, Petitioners broadly assert that the Board may not decide a petition based only on written submissions, and must instead decide every petition based on testimony and written submissions at an evidentiary hearing. This argument calls into question the Board's use of pre-hearing procedures which require that technical evidence be submitted in advance of a hearing on a petition, since Section 74-2-7(K) requires the Board to reach its decision "[b]ased upon the evidence presented *at the hearing*[.]" (Emphasis added.) It also calls into question the Board's expedited procedure under 20.11.81.20(A) NMAC, which allows the Board to decide a petition based on "legal arguments presented in written briefs" and to "limit presentations at the hearing to oral arguments by parties and interested participants." *Id.* This provision arguably denies "[t]he public . . . a reasonable opportunity to submit data, views or arguments orally or in writing and to examine witnesses testifying at the hearing." Section 74-2-7(I).[3]

---

[3]This argument raises an interesting possible response, which Respondents did not raise below or in their answer brief: Perhaps Petitioners' challenge to the Board's use of summary procedure is better understood as a challenge to the validity of the Board's regulations. If so, it seems untimely: Judicial review of the Board's actions under Section 74-2-9 must be commenced less than thirty days from the date of the action, and "[f]or appeals of regulations, the date of the action shall be the date of the filing of the regulation." Section 74-2-9(A), (B).

{14} Petitioners' second, narrower position is that whatever the validity of the Board's use of summary procedure, it failed to provide the public with sufficient notice of its right to participate in the Board's hearing on Respondents' motions for summary judgment. We find it unnecessary to address Petitioners' first, broader, position, because we agree with Petitioners' argument on this narrower ground, and that is enough to decide this appeal. We explain our reasoning in the following paragraphs.

{15} The Board itself concluded that the petition at issue in this appeal would substantially affect the public interest, so the Board was required to "ensure that the public receives notice of the date, time and place of the hearing . . . [and] a reasonable opportunity to submit data, views or arguments orally or in writing and to examine witnesses testifying at the hearing" on the petition. Section 74-2-7(I). The amended public notice the Board published in the *Albuquerque Journal* reads in relevant part as follows:

> A hearing before the Albuquerque-Bernalillo County Air Quality Control Board (Air Board), previously scheduled for September 10th and 11th, 2014, is now scheduled to begin on **Wednesday, November 5, 2014** at 9:00 a.m. and continue as necessary through **November 6th**.
>
> . . . .
>
> **PUBLIC COMMENT of a non-technical nature: Wednesday, November 5, 2014, 5:00 pm to 5:30 pm** or longer as necessary to accept all public comment offered (per 20.11.81.14.I.(2)). The Hearing

Officer may take public comment at other times throughout the hearing as necessary.

. . . .

**MOTION HEARING:** In the event pre-hearing motions are timely filed, the Board will conduct a motion hearing on October 8, as part of a Board meeting that will begin at 5:30 p.m.

In our view, this notice plainly fails to inform the public that the Board might well resolve the appeal by use of summary procedure prior to the November 5, 2014, public hearing.[4] The amended public notice makes no suggestion that the "pre-hearing motions" that the Board would possibly entertain at its regularly-scheduled meeting could be dispositive and result in cancellation of the noticed public hearing. The amended notice suggests just the opposite: that the Board would *not* decide the petition until it heard public comment at a hearing scheduled for November 5, 2014. As such, the public was deprived of a reasonable opportunity to participate in the proceeding. Pursuant to Section 74-2-7(I), therefore, the Board's decision is contrary

---

[4]We note that the amended public notice's description of the "pre-hearing motions hearing" is similar to the amended prehearing order's description of the same hearing, except that the public notice omits the amended prehearing order's characterization of the pre-hearing motions as possibly "dispositive." *Compare* Amended Prehearing Order ("[i]n the event dispositive motions are timely filed, the Board will hear them on October 8, 2014, as part of the Board meeting beginning at 5:30 p.m."), *with* Amended Public Notice ("In the event pre-hearing motions are timely filed, the Board will conduct a motion hearing on October 8, as part of a Board meeting that will begin at 5:30 p.m.").

to law and must be vacated.

{16} Respondents offer two arguments in opposition to this conclusion. First, Respondents contend that the Board was permitted to dispose of the petition using summary judgment under two provisions in the Board's regulations: 20.11.81.12(A) NMAC, which provides that "[i]n the absence of a specific provision in 20.11.81[. 1 to .20] NMAC governing an action, the [B]oard and the [B]oard's hearing officer may look to the New Mexico Rules of Civil Procedure . . . for guidance[;]" and 20.11.81.12(B)(1) NMAC, which permits the Board to "specify procedures in addition to, or that vary from the procedures provided in 20.11.81 NMAC in order to expedite the efficient resolution of the action." But under 20.11.81.12(A) NMAC, the Board may not look to the Rules of Civil Procedure if doing so would "extend or otherwise modify the authority and jurisdiction of the board." *Id.* 20.11.81.12(B)(1) NMAC contains a similar limitation: the Board may not vary its procedures if doing so creates a "conflict with the act or the regulations, or prejudice the rights of any party." *Id.*

{17} The upshot of these regulations and Section 74-2-7(I)'s mandatory requirement that the Board "ensure that the public receives notice of the date, time and place of *the* hearing" on a petition is that the Board may not decide a petition without giving the public notice and an opportunity to weigh in on the petition. *Id.* (emphasis added).

10

This requirement is reflected in the Board's existing regulations relating to evidentiary hearings, *see* 20.11.81.14(H)(2) NMAC, and expedited decisions. *See* 20.11.81.20(A)(2) NMAC. Whatever the merit of the Board's conclusion that its regulations governing permit appeals did not "govern" Respondents' motions for summary judgment, the Board may not use the *absence* of a provision requiring public notice in Rule 1-056 NMRA as a justification for ignoring the straightforward requirement in Section 74-2-7(I) requiring such notice to be given. When an agency is required by statute to provide public notice of a hearing, that notice must "fairly apprise[] the average citizen . . . with the general purpose of what was contemplated." *Nesbit v. City of Albuquerque*, 1977-NMSC-107, ¶ 9, 91 N.M. 455, 575 P.2d 1340. If the notice is "ambiguous, misleading or unintelligible to the average citizen, it is inadequate to fulfill the statutory purpose of informing interested persons of the hearing so that they may attend and state their views." *Id.* The notice at issue plainly fails this test: it does nothing to apprise the reader that the "pre-hearing motions hearing" would be the one and only hearing on the petition. And it affirmatively misleads the reader by suggesting that the public would be given an opportunity to comment on the petition at the November 5, 2014 hearing, when in fact the hearing was never held. To say the least, misinformation does not comport with the publicly inclusive spirit of the applicable statutory framework.

11

{18} The City nevertheless contends that the Board provided sufficient notice to the public because "the August 3, 2014 [amended] notice included instructions for persons other than parties who wished to participate to submit an entry of appearance and explained how to file a notice of intent." The City points out that if interested members of the public filed an entry of appearance or notice of intent, they would have received individual notice of Respondents' motions for summary judgment and the possibility that Petitioners' appeal would be decided prior to the scheduled November 5, 2014 hearing. *See* 20.11.81.14(G) NMAC. But the problem with this argument is that it overlooks the central deficiency in the amended notice: it plainly suggests that the Board would consider "public comment of a non-technical nature" at the November 5, 2014 hearing, which the Board never held. A member of the public reading this notice thus would have reasonably believed and relied on the amended notice's assertion that he or she would have an opportunity to communicate his or her views to the Board at this hearing *without* having to submit a notice of intent or enter their appearance. Having failed to hold the hearing, the Board's amended notice is contrary to the requirement in Section 74-2-7(I) that the public be given notice of, and an opportunity to participate in, its hearing on a petition relating to a permit which affects the public interest.

{19} Respondents also argue that any deficiency in the Board's notice did not

12

prejudice Petitioners' case, so we should nonetheless affirm. In other words, Respondents contend that the Board's decision (and this appeal) would turn out the same even if the Board had held a hearing on the merits and considered public comment on the petition. *See P.R. Aqueduct & Sewer Auth. v. U.S. EPA*, 35 F.3d 600, 606 (1st Cir. 1994) (upholding the use of summary procedure in agency adjudication where "it appears conclusively from the papers that, on the available evidence, the case only can be decided one way"). Indeed, this Court too has accepted as a general proposition that unless the party challenging an agency's violation of procedural rules or regulations can demonstrate prejudice, we will not reverse an agency decision that would have been the same in the absence of the violation. *See BC & L Pavement Servs., Inc. v. Higgins*, 2002-NMCA-087, ¶ 38, 132 N.M. 490, 51 P.3d 533, *overruled on other grounds by Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, 133 N.M. 97, 61 P.3d 806.

{20} Pursuant to the authority it cites, Respondents would have us evaluate the merits of the parties' arguments on appeal, and uphold the Board's decision if, as they contend, Petitioners' health-and-traffic-related concerns cannot as a matter of law furnish a basis for modifying or denying a permit under the AQCA. *See generally Colonias Dev. Council v. Rhino Envtl. Servs.*, 2005-NMSC-024, ¶¶ 29-35, 138 N.M. 133, 117 P.3d 939 (noting that an administrative agency's "authority to address"

health and safety concerns "requires a nexus to a regulation"). As counsel for the City explained at oral argument, the public's right to notice and an opportunity to comment is contingent on a person who participated in the Department's permitting action lodging a challenge to the Board's issuance of a permit. *See* § 74-2-7(H). Otherwise, the Department's permitting decision is "conclusive" as to the permittee's compliance with the AQCA. *See* § 74-2-7(L). Because of the contingent nature of public participation in permit appeals to the Board, Respondents maintain that the Board cannot be faulted for failing to provide sufficient notice to the public when the challengers' underlying appeal would have failed in any event.

{21}    We reject this argument. First, it is by no means certain, as Respondents contend, that the Board's failure to solicit public input on the petition had no effect on the outcome of its decision. It may be that the party challenging a decision by the Department carries the burden of proof on appeal before the Board. Section 74-2-7(K). But the AQCA unambiguously requires the Board to consider "data, views or arguments" offered at a public hearing when a permitting action "substantially affect[s] the public interest[.]" Section 74-2-7(I). Since the Board must decide a petition "[b]ased upon the evidence presented at the hearing," Section 74-2-7(K), it follows that the Board may modify or overturn a permit based on evidence presented by the public, not just the party who challenged the Department's decision in the first

14

instance. So even if Petitioners failed to present sufficient evidence to justify overturning or modifying the Department's permit decision, it does not follow that any evidence the public could have presented would be deficient in the same way.

{22}     To be sure, the Board's own regulations allow it to require that any "technical" evidence be presented before the hearing, *see* 20.11.81.14(H)(1), (I)(2) NMAC, and its notice to the public in this case says as much. Respondents' argument on the merits is that the only evidence that could have furnished a basis for overturning or modifying the Department's permitting decision was evidence concerning the proposed gas station's compliance with various state and federal regulations, which is technical in nature. Since Petitioners failed to present any such evidence and no member of the public signaled any intent to present additional technical evidence prior to the motion hearing, Respondents' argument is that we should excuse the Board's failure to hold a hearing on November 5, 2014, where the public would only be allowed to present "comment of a non-technical nature[.]"

{23}     But even if the public would have been disallowed from presenting any evidence that would have justified overturning or modifying the Department's permitting action, we conclude that the Board's failure to provide the public with sufficient notice requires reversal in this case for a second, independent reason. Respondents would have us read language into the AQCA that allows the Board to

dispense with the requirement that it allow the public to present its views or arguments whenever it determines that the public's views or comments will have no nexus to an applicable regulation. *See In re Rhino Envtl. Servs.*, 2005-NMSC-024, ¶ 29. But the AQCA unambiguously requires the Board to consider the public's "views or arguments" when a permitting action "substantially affect[s] the public interest[.]" Section 74-2-7(I). Accordingly, the issue of the Board's need to consider public comment turns on whether a petition affects the public interest, not whether the public will provide evidence that is relevant to the Board's ultimate decision. *Id.* Thus, in permitting actions that substantially affect the public interest, the Legislature has recognized the intrinsic value of public input separate from its technical relevance by requiring the Board to consider public input prior to reaching a decision. "When a statute makes sense as written, we will not read in language that is not there." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. The Board's failure to provide the public with notice of its hearing on Petitioners' challenge is contrary to the dictates of the statute and undermines its apparent purpose—giving the public an opportunity to comment on a challenge to a permitting decision which substantially affects the public interest. Accordingly, its decision must be vacated.

**CONCLUSION**

{24} Section 74-2-7(I) requires the Board to publish a notice and afford the public

16

an opportunity to participate in all petitions challenging permit decisions which substantially affect the public interest. The Board's decision upholding the Department's issuance of a permit to Smith's was contrary to law because the Board did not provide the public with notice or an opportunity to provide input on the Petition, as Section 74-2-7(I) unambiguously requires.

{25}    The decision of the Board is vacated, and the petition is remanded for proceedings consistent with this opinion.

{26}    **IT IS SO ORDERED.**


_____
                                                        **J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**STEPHEN G. FRENCH, Judge**